## Case No. 6,746.

### HOVEY v. STEVENS.

[3 Woodb. & M. 17;[1] 2 Robb, Pat. Cas. 567.]

Circuit Court, D. Massachusetts. Oct. Term, 1846.

INFRINGEMENT OF PATENT — DESCRIPTION — SUBJECT OF—NEW INVENTION—COSTS IN EQUITY.

1. In a patent for an improvement in the machinery to grind knives, it is necessary, by the act of congress, not only to describe the machine to be used under the patent, but to distinguish what part of it, or what combination under it, is new, or is the improvement claimed to be invented. It is made necessary, also, by that act, to do this in clear, intelligible, and certain terms. This is not now required to be done with so great accuracy as was formerly exacted, nor to be done in technical language; but it must be made with reasonable certainty and clearness. It may be done in a summary at the close of the specification, disclosing as new any of the machine before described, which is old in its parts, or in combination, or it may be done in the summary, referring in terms, or by implication. to other parts of the specification for assistance, and in such case the other parts are to be considered as explanatory of the summary, or a portion of it, for this purpose.

2. In this case, the summary appeared to claim a traverse motion of a part of the grinder, in combination with a rotary one, so as to bring up the knife to the stone steadily, though spiral in form. On referring to other parts of the specification, as to what his invention consisted of, it still seemed to be the combination of those two motions, and it was *held* that such a combination, when connected, as here, with the mode of effecting it, was a legal subject of a patent.

3. But it being conceded that it was not original, the plaintiff was not allowed now to consider his invention or improvement to be the stock used in the machine, or the goose neck, pressing the blade against the stone, when he had not distinguished either of them in any portion of the specification as the new and particular improvement he had made, nor done it, if at all, with reasonable certainty.

4. It is not enough to describe a machine containing the stock, or goose neck; but he must state further, that they, or one of them, is what he claims to have invented, either as a new part, or used in a new combination, if such be the fact.

5. So if he claims the whole machinery as newly invented, either in parts or in combination. he must state that distinctly; and it will suffice, if he really invented the whole combination, or all the parts. But if he claims too much, or too broadly, it will be fatal, unless the excess is disclaimed.

6. If his particular improvement, which he really meant to claim as new, is not distinguished from the rest of the machinery, as new, nor in sufficiently clear terms set out. the only mode of obviating the difficulty is either by an amended specification or a new patent.

7. Costs in equity are prima facie to be allowed to the prevailing party. But where they are inequitable in whole, or in part, they may be disallowed; though the burthen of showing them to be so rests on the party objecting to them. If the bill is brought solely for the benefit of the complainant. they are disallowed, to him, unless the respondent is charged with some wrong; and if the respondent succeeds on other grounds than those, in which cost was incurred,

1 [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

his cost may be disallowed in the discretion of the court.

[Cited in Bradley v. Rhines, 8 Wall. (75 U. S.) 393.]

8. But where he succeeds in a bill for an injunction against the use of a patent, on the objection of too great uncertainty in the specification, and no decision has been made in equity or at law in favor of the originality of the patent, which had been denied by him, he is to receive costs incurred in that defence.

9. But where the evidence cast some shade over his fairness of conduct in respect to the plaintiff and his machine, the court declined to allow him beyond actual cost, and rejected travel and attendance in the bill in equity while taxed at the same terms in the suit at law.

[Cited in Andrews v. Hovey, 124 U. S. 705, 8 Sup. Ct. 678.]

This was an action at law [by William Hovey against Silas Stevens] for a violation of a patent, which had been obtained by the complainant, for "a new and useful improvement in the machinery for grinding tools." It was alleged be to peculiarly fitted to sharpen knives used in Hovey's strawcutter, and the letters patent were in the form set out in the case of Hovey v. Stevens [Case No. 6,745], heard here May term, 1846, for an injunction. The material parts of the specification are there extracted, as well as in the opinion of the court here, and are referred to as part of this case. At the trial here, October term, 1846, before Judge SPRAGUE, the plaintiff, after proving his patent, offered a paper, certified to be a copy of one filed by him in the patent office, October 6, 1846, as a new specification for a reissue of letters patent. It described certain portions of the original patent, as in substance in the case before referred to. It set out, also, that "the nature of my invention consists in applying to said machine a stock or arbor, having a flanch thereon, on which the spiral or twisted knives are fastened to be ground," &c. And further, that the stock was "not claimed as new;" and in the close, that he did not "claim the grinder, the traversing carriage, or rotary motion, as they have before been used; but what I do claim as new, and desire to secure by letters patent, is the combination of the stock, constructed" as described, and knives attached, &c., &c. The judge ruled, that this paper offered as evidence of a disclaimer of portions of the old specification, was not competent evidence for that purpose, as it had not been filed as a disclaimer in the patent office; nor was it completed as a new specification by a surrender of the old one. And he further stated, therefore, that, in his opinion, the plaintiff's claim was so uncertain and so imperfectly described without it, or in the original specification, as to make his patent invalid until he filed another and more accurate and more specific description of what he deemed new and patentable in his invention. He neid, that it might be considered as clear enough for a combination of two motions described, but for nothing else; and the mode of con-

structing them was conceded not to be original. Thereupon the plaintiff became non-suit, with leave to move to set it aside, and be heard on this ruling before the whole court. The hearing was commenced in November, 1846, and renewed and finished in April, 1847.

C. Sumner and B. F. Hallett, for plaintiff.

Chas. Levi and Woodbury & Stanton, for defendant.

SPRAGUE, District Judge, stated his views at length, against the motion.

WOODBURY, Circuit Justice. I concur, generally, in the conclusions expressed by my associate, on this motion. Having tried the case, he has devoted particular attention to its different aspects; and it is not, therefore, necessary for me to go very fully into the grounds for my opinion. But as the argument has been before both of the judges of this court, in order to have the minds of both exerted on the question, I do not feel at liberty to withhold some detail of the impressions made on mine. The ruling at the trial, that the new specification, not being completed, could not be considered as a disclaimer, is not objected to at the argument. The sole question, then, is, whether the original specification sufficiently distinguishes what is the particular improvement claimed to be invented by the plaintiff, and then describes it with proper clearness and accuracy. On a former occasion, when an injunction was moved against this defendant, I presented some views on the matters supposed to be claimed as new in this patent. Hovey v. Stevens [Case No. 6,745]. But by the proposed new specification since filed, and the admission of counsel in the argument of the present motion, the aspect of the case has been, in some respects, changed, and our inquiries much narrowed. This patent is, in the letters themselves, described to be for "a new and useful improvement in machinery for grinding tools." This obviously means, looking to the patent itself, not "that he has invented" the whole machine for grinding, which he afterwards describes in his specification, either as a new combination throughout, or as having new parts throughout, but that he has made some "new and useful improvement in the machinery" ordinarily used for that purpose.

The next inquiry is, what is that particular improvement, looking to the specification and drawings? How is it described, or distinguished from what is not new, when there is a summary setting out the claim to some particular novelty that is to govern? Moody v. Fiske [Case No. 9,745]; Wyeth v. Stone [Id. 18,107]. But, if it refers to other parts of the specification and drawings, those parts are to be examined in connection with it, in order to ascertain what is claimed in the summary as the new improvement. See Davoll v. Brown [Id. 3,662], and cases cited therein.

I am not aware that the new paper filed as an amended, or new specification, but not completed, can be referred to in construing the summary and original specification. And it is now conceded not to be properly in the case as a disclaimer. But it can probably be considered as an explanation by the plaintiff, of his intended meaning, and can be referred to, in considering whether the words as used in the original specification carry out clearly, or not, what it is now said he then intended. The summary is in these words: "What I claim as my invention, and desire to secure by letters patent, is, giving to the spiral or twisted knife or cutter, attached to a flanch in a line radiating (or nearly so,) from the axis of the stock, a traversing motion in the direction of its axis, in combination with a reciprocating rotary motion on its axis, when this latter motion is governed by the twisted plane of the cutter, or anything essentially the same, to enable the grinder to give the required bevel to the ground face, and the proper line to the edge, substantially in the manner herein described."

No one can read this without coming to the conclusion that the improvement Hovey describes here, as invented by him, is giving to the knife, as fastened, a traversing motion in combination with a reciprocating rotary motion. In the next place, if the concluding words, "substantially in the manner herein described," allow and claim any different manner of giving those motions in combination, it does not alter what is claimed as the improvement, but merely permits the mode of giving the motions to be different, if remaining "substantially" the same. If, also, "herein described" means, in the whole specification, rather than the summary, which is a little doubtful, but ut res magis valeat, I will so consider it, by adopting a liberal construction towards the patentee. I do this, not to prejudice him by including more than is in his summary, and thus making the latter too broad, and hence, void. But it is to aid him by further illustrations and explanations. I do not see, however, that the obvious meaning of the summary, when standing alone, is altered by the descriptions, when they are carefully analyzed. There are two of these. The first one is: "The nature of my invention consists in attaching the twisted (sometimes called spiral,) blades or cutters to a flanch projecting from a stock hung on journals in a traversing carriage, so as to present the back of the cutter to be ground to the action of a grindstone, or other reducing or polishing wheel, so that as the cutter on the carriage traverses lengthwise, it shall vibrate freely on the axis of the stock to which it is attached, to follow the twist of the blade, and grind it to a sharp edge, such as is required in cutting, by impinging the cutting edges against the surface of a cylinder by the rotation of the two cylinders, or the

cutting cylinder on a plane, the cutting being effected by a pressure towards the centre of the axis of the cylinder of knives. The reciprocating motion of the cutters, during the traverse motion, being governed by the spiral or twisted surface of the knife itself, or anything analogous thereto." Here, again, the leading feature is the combination of the two motions. So is it in the only other description of his invention, as follows:—Certain things are necessary "to carry out my invention, viz., to give to the stock to which the knives or cutters are attached, a reciprocating motion on its axis, whilst it traverses longitudinally before the grinder, sa as to give the required bevel to the ground face, and a line to the cutting edge, which, in its rotation, will generate a cylinder." Now, although those motions are described as produced by the stock and other machinery used to grind the knives, yet it is the combination of the two motions which is the most clearly described as his new improvement, and not the use of either a stock, or goose neck, or flange, or attaching the knife by a screw. They seem to be mere parts of the machinery in which the combination of these two motions is represented as the novelty. In the next place, though it is doubtful whether a patent can be taken out for mere motions, or for mere combinations of motions, yet adopting again the most liberal construction for the patentee, that this is a patent for a new mode, or manner of producing those motions, the matter might be patentable. Stone v. Sprague [Case No. 13,487]; 3 Car. & P. 502; Jupe v. Pratt, Webst. Pat. Cas. 144.

But after reaching that conclusion we are met by the admission in the amendment of the specification filed, and in the argument for the plaintiff, that the combination of those two motions is not a novelty; and that if the patent is to be regarded as for that, it is too broad, and hence, being not original for that, must be invalid. Kay v. Marshall, 1 Mylne & C. 373; Wyeth v. Stone [Case No. 18,107]; [Evans v. Eaton] 7 Wheat. [20 U. S.] 356; Moody v. Fiske [Case No. 9,745]; 4 Barn. & Ald. 541; Bovill v. Moore, 2 Marsh. 211. How then can the plaintiff be entitled to recover, or be aided by a new trial? Only, I apprehend, by showing from the specification, that some other thing tnan this combination is actually and clearly claimed in the original specification as the new improvement.

At the hearing of the motion for the injunction, it was conjectured that if any other new improvement was claimed, it might be the mode of fastening or attaching the knife to the flange with a screw. But it appears now, in the admission before referred to, that the fastening of the knives with a screw is not meant to be claimed as a novelty. Neither is the grinding one knife at a time claimed as a novelty, standing alone and per se. While, on the contrary, in the statements

in the new specification filed, it is the stock, in combination with the other parts, which he desires to have considered as his particular improvement. But at the argument of the present motion, it seems to be contended, there are three novelties in the improvement of the plaintiff, and either of them well enough distinguished. One is a new combination of all the parts, they all being old for like purposes—that, it is said, never before so united in this manner. One is in the stock as permanent, united with the other parts; and one is the mode of pressing the blade against the stone, combined with the rest. Now, as to the first claim, we are unable to discover it in the specification, as for any new combination of parts, unless it be the traverse and rotary motions, united—and that is now acknowledged not to be new. As to the second claim for a new part in a permanent stock, or a new combination with it, it is certain that the original patent refers to the stock, and so does the proposed disclaimer. But the latter concedes it is not a new part. Neither of them speak of it as a permanent stock, ipsissimis verbis, and the machine, it is conceded, would work well without its being a permanent stock—but not so well for some purposes. Undoubtedly a permanent stock at times is better, so as to attach to it separate knives and grind them, when out of order, or to attach newly made separate knives and grind them, so as to be ready for commercial sales at a distance, and for immediate use. Unless the stock then, be claimed as a permanent one, and, being such, as a novelty, either in the combination or as a separate part, this second ground fails. For temporary stocks, or moveable stocks have long been used in grinders for sharpening clothing shears—if both they and permanent ones have not been in combination with other parts similar to those for grinding knives to split or shave leather. The third and last claim of novelty in a part or in the combination, is the goose neck pressing the knife to the stone. Because, according to the paper filed as an amendment, unless the combination consists of a permanent stock with the other parts, there is nothing else in the combination which is now claimed at this hearing, that is new or useful, unless it be the goose neck and screw to hold against the back of the knife to keep it close to the grindstone.

Now, in examining whether the original specification can be fairly construed to distinguish this stock in particular, or this goose neck, as the new improvement of the plaintiff, when combined with the rest—that is, never having been before so combined substantially, the language used must be looked at liberally and favorably to the plaintiff. It is apparent, from all the specifications and drawings, that both the stock and goose neck, to press the knife against the stone, are enumerated and described as parts of the whole machine. This, however, is not enough

to relieve the case from its difficulties. Here, after describing the whole machine with all its parts, which is well enough done in most respects, he should have distinguished the stock or the goose neck as the new parts he had invented; or if neither, he should have stated the combination of one or both to be new with the rest of the machinery, or if not so, that some other combination in the machine, or the whole of it, was what he claimed as his improvement. 2 Marsh. 212. Thus the whole machinery and apparatus were claimed as new in Wyeth v. Stone [Case No. 18,107]. But, instead of any of these being done here, he seems to distinguish and particularize with clearness nothing as novel in the machine, except, as first mentioned, the combination of the two motions. Nor are these distinctions useless or arbitrary, or of recent requirement in our patent laws.

. A party may claim to have discovered some new part of a machine which is useful, or some new combination, or in other words, new arrangement of old parts, which is useful. Either is patentable. But they are not to be described in the same way; and whichever is his particular improvement must be plainly stated; because the public, when making or using similar machines, have a right to know, first, what he claims to have patented and invented as new—whether new parts or new combinations only; and if new parts, what new ones? and if new combinations, of what old parts? See cases cited in Davoll v. Brown [Case No. 3,662]. So the persons whom a patentee prosecutes have a right to know clearly what they are to defend against; a claim of new parts or of new combinations? and if of either, the specific parts which are set up as new, or which are set up as brought into a new combination. Wyeth v. Stone [supra]; Webst. Pat. Cas. 86, note; Macfarlane v. Price, 1 Starkie, 199; Rex v. Cutler, Id. 354. So the act of congress requires this. What is claimed as new or an improvement is to be set out substantially, in order that the commissioner of patents may judge if it be new, so as to issue a patent. and courts may see whether it is new in the trials contesting it. Lowell v. Lewis [Case No. 8,568]. It is necessary to be done, also, to see if he claims any thing before known or not, or, in other words, too much. On these points see. also, 1 Starkie, N. P. 199; Evans v. Eaton, 3 Wheat. [16 U. S.] 354; Phil. Pat. 268, 270, and cases cited therein; 3 Brod. & B. 5; 2 H. Bl. 489, 464; 3 Car. & P. 611; Ames v. Howard [Case No. 326]; 2 Starkie, 249. Hence, saying that the patentee has made an improvement in certain machinery without distinguishing what it is, or what part is new, has been adjudged to be bad. Barrett v. Hall [Case No. 1,047]; 1 Starkie, N. P. 149; Phil. Pat. 398. Or saying he has made an improvement in a machine, and describing the machine. but not distinguishing the novelty or new improve-

ment from the rest, is equally bad. Davies, Pat. 361; 2 Marsh. 211. Also, it must not only be distinguished, but so distinguished as to be intelligible, unambiguous, accurate. 3 Car. & P. 611. Beside the good reasons in favor of this, there are the positive requisitions by congress. By the act of July 4th, 1836, the patentee "shall particularly specify and point out" what he claims "as his own invention or discovery." See, also, Bovill v. Moore, 2 Marsh. 211; Stone v. Sprague [Case No. 13,487]; Wyeth v. Stone [supra]; Moody v. Fiske [Case No. 9,745]. See section 5, "specifying what the patentee claims as his invention or discovery." See section 6. "In case of any machine he shall fully explain the principle and the several modes in which he has contemplated the application of that principle or character by which it may be distinguished from other inventions." 5 Stat. 119. I would not, however, be so strict on this as was once the practice. See Phil. Pat. 398. I would be as indulgent to patentees in describing their claims as is consistent with the rights of the public and of other inventors, and the imperative requirements by congress. To obtain clearness and exactness I would not confine them to technical language; but rather encourage what is in popular use, and better understood by all. 4 East, 135. Nor in most cases are they to be restricted to any particular part of their specification, but resort for light to all portions of it and of the drawings. See Davoll v. Brown [supra]. Yet still the claim to novelty must, not merely for the reasons before stated, and the acts of congress before cited, but by all on this subject from the foundation of the government, be clearly described somewhere in the specification. Thus, by the act of 1790, § 1 [1 Stat. 109], it must clearly, "truly" and "fully" be set out. By the act of 1793, § 3 [1 Stat. 321], it must be described in "full, clear and exact terms," so as to be distinguished from what was before known. In short, the bargain by government is to give the inventor an exclusive use for 14 years, if he will place on record and distinguish clearly and truly what his novelty or improvement is, so that the public can easily understand it and benefit by it after the 14 years, if not before. Webst. Pat. Cas. 86; 11 East, 105; 3 Mer. 161. Hence, of course, the claim must be made to something as new, in such plain terms that it can be readily understood, and with "reasonable certainty"—Wyeth v. Stone [supra]—what it is. The fewer technical terms are used the better, if the subject is intelligible without them. But as specifications are legal instruments no less than descriptions of mechanical and philosophical, and sometimes chemical improvements, it is desirable that they should always, before filed, be examined by some experienced lawyer as well as by some machinist or other expert, fully acquainted with its subject matter. Infinite expense and trouble would be yearly saved by this. The advice of legal counsel

is as useful in the preparation of such an instrument as in preparing a difficult deed or will.

In the present case, for instance, how easy and clear it would have been, to say in the specification what the inventor wished, and to say it so as to be at once intelligible to all. If originally he claimed no part as new, to say so; and to add, that all these old parts so combined and arranged in order to give a bevel edge to the knives, was the sole novelty in his claim. And if, in that combination, the stock to be used was meant to be a permanent one, and that was deemed important, to say so. Again, if he meant to claim some part as new, as well as a new combination, and he deemed it proper to not unite both in one patent, how easy it would have been to have identified the part as new, which he claimed, as well as described the new combination. So, if he meant to claim as a new invention some part alone, independent of any new combination, it would and should have been so described, separately, as a new part. But now, unfortunately, all is doubtful on the face of the patent as to what he claims to be new, unless it be the combination of the two motions. It is not doubtful what the machine is in which he intends to patent "an improvement," as before remarked, except, perhaps, in one important particular, as to the stock of it being permanent or not. But, putting the construction on that most favorable to him, the doubt remains from his description of the machine, what was the particular improvement in it which he claims to have invented? what does the machine perform, that he supposed was novel? or by what improved arrangement, except the two motions combined together? It was not new for it to give a bevel edge to instruments, as that had been given before. Nor does he claim this as the novelty in his operations. But he rather claims a novelty in the mode of doing it. At first he seemed to claim that novelty in the mode to be by combining the traverse and rotary motions. Next, it seemed from other portions of the specification, to be by attaching the knives to a flange by a screw; then it was said to be by using a permanent stock for the flange and knife; and lastly, by the goose neck and screw, to secure the knife when grinding, to the grindstone. All these occurred to others, on reading the patent, if they were not all suggested on his part. This uncertainty and obscurity as to which was meant, or which is, in fact, described as the novelty, except the two motions, are an insuperable difficulty, as the letters now stand, and cannot be overcome except by a new specification. They are objections, not merely on conjectural data. The latter stand out in bold relief on the face of the specification, and the objections cannot be removed but by the use of new language. It is now said that in point of fact he did not mean to claim the two mo-

tions, or the attachment by a screw, or moveable stock, as novel; but rather a permanent stock, and the apparatus to crowd the knife, while grinding, close to the stone. He seems yet to hesitate between these two last. But if he meant to describe these two, or either of them, as the novelties, in his original specification, he was very unlucky in the terms selected, since the other matters, rather than these, were, at the first hearing of the case, supposed to constitute what was new in his apprehension. They still, on the fact of the specification, seem most prominent. Whether these parts now insisted on, the stock or the goose neck, are, in truth, new or not, either in themselves or in combination, is a question not before us at this time; but only whether they are plainly distinguished in the specification as the particular improvement which he claims to have invented? On that, it is enough to say that by the language he has there used, neither of them seem to be so described at all; much less described with reasonable certainty.

The machine itself, as a whole, is described with sufficient clearness and certainty, as the counsel justly argue, unless it be whether the stock is permanent or moveable. But that is not the difficulty. It is the want of a description, whether his improvement is meant to be as consisting in the combination of the whole, or of all the parts, or only of one or two of them; and if the last, which? And, also, whether it consists in such new combination of some of the parts; or of an invention, also of some, and if so, which? This is the fatal uncertainty, and extends to everything claimed as new; except, also, the two motions, and the combination of them is admitted to be not original. Several cases have been cited and urged on us parallel to this, where the patent or principle contended for by the plaintiff, has been sustained. But, in all, the description was different, or the validity of the claim was overruled; and in the present case the description fails to meet either of the two strongest cases cited in Story's Reports [Stone v. Sprague, Case No. 13,487; Wyeth v. Stone, Id. 18,107], or those in Mason, Wheaton, and Marshall, which have not been cited, but which bear strongly on this case. I have made a thorough analysis of all of them, but it is not necessary to repeat it, as the principles involved in them are embodied into the remarks already submitted by me.

I regret the delay and expense which an amendment of his specification will cause to the patentee; but am better satisfied in coming to the conclusions that it is necessary, (forced on us by considerations of settled law, and safety to the public as well as individuals,) by the reflection that the patentee, if he has made a new and useful invention, is still able to reap the benefits of it. He will effect this by describing, in a new specification, what he claims as new, with greater certainty, accuracy and clear-

ness, so as to comply nearer with the act of congress, and give to the community the particular information, to which they are, by law, entitled, concerning what he claims to be new. Care, of course, will be taken, also, to disclaim all he does not consider as new, in his combination, or new in the parts used. Bovill v. Moore, 2 Marsh. 212; Prouty v. Ruggles, 16 Pet. [41 U. S.] 336. The motion to set aside the nonsuit cannot be granted.

After this decision was announced, the bill in chancery, which was pending between the same parties for an injunction against the use of this grinding machine, by the defendant, was directed to be dismissed. See a report of the original case at the last term. Hovey v. Stevens [Case No. 6,745]. The complainant moved that no cost be allowed to the respondent, except in the present action at law, on the nonsuit. This motion was argued at the May term, 1847, by the same counsel on both sides, and the opinion was pronounced by

WOODBURY, Circuit Justice. It is, doubtless, a sound principle in chancery, to exercise some wider discretion over the allowance of cost, than is done in a court of law. See Hunter v. Marlborough [Case No. 6,908], at the last term, and Burnham v. Rangely [Id. 2,177]; Hull. Costs, 625, 626; 2 Ath. 111, 400, 552. But still the general rule is there, as at law, to give costs to the prevailing party. See cases cited in those above, and Barker v. Birch, 1 Dowl. & L. 816; and 7 Scott, 397; 4 Beav. 350. What prevails by law—what is legal is presumed to be moral, and conscientious, and equitable, till the contrary is shown. Vancouver v. Bliss, 11 Ves. 462. This rule is applied, likewise, to bills for injunctions, as well as to other proceedings. 3 Mylne & C. 738. But, if peculiar circumstances of an equitable character exist in favor of the defendant receiving no cost in the case, or none for particular items, it is deemed justifiable to withhold them. See ante. But the burthen to show these peculiar circumstances is on the complainant. 2 Ves. Jr. 463. See cases before cited. And Lord Eldon regretted that the rule in chancery had ever been different from that at law. See cases in Hunter v. Marlborough [supra].

I am not disposed to depart from what has been long established on this subject; but shall not be inclined to make exceptions to the general rule which prevails both in equity and law, beyond what is sustained by sound principles and established precedents. None have been referred to, withholding costs from the prevailing party, under circumstances like these, while several cases seem opposed to it. Thus, it has been held, where a party had obtained an injunction, and it was dissolved, that costs of affidavits, taken and used for the respondent, should be allowed, though he might have succeeded

without them, on a demurrer. He had a right to pursue either course. Bamearly Canal Corp. v. Timbly, 13 Law J. (N. S.) 34. On the contrary, where a long defence was resorted to against a bill in chancery, and failed, though the bill was dismissed on other grounds, costs to the respondent were disallowed (Sanders v. Benson, 4 Beav. 350), because he had not succeeded in what they related to. So, if the will was not for any wrong of the defendant, but to settle what the title of the plaintiff was, and a decree was for the plaintiff, he had no costs against the defendant. In Robinson v. Cropsey, 2 Edw. Ch. 143; 2 Chit. Eq. Dig. 933, 934. Again, where items exist in the bill of cost, which are vexatious or unnecessary, they can be excluded if distinguishable from others which were proper. 1 Beav. 130; 4 Beav. 25. Bringing the present case to these tests, nothing is found in the general character of the cause which raises any peculiar claim from exemption from the usual rule of allowing costs to the prevailing party. The fact, that the bill for an injunction failed, on account of a defective specification, which thus made the title to the patent bad, by an express act of congress, was not a failure for any fault of the defendant; nor was it from the want of form in the bill of pleadings, which could be cured by the statutes of jeofail, or an amendment; and hence, not be visited by large costs, charged to the plaintiff. But it was a defect in the patent or deed itself, of the plaintiff—an imperfection in his title. It was not curable by any amendment within the power of this court. And, by the patent law, itself, when amended, at the patent office, as it may be under the 13th section of that law, if happening "by inadvertence, accident or mistake;" yet it is only then, and it is done at the loss of all the previous term of the patent, and of all actions pending, and, of course, of the cost incident to them; being valid only in respect to "cases subsequently accruing." See 13th section of the act of July 4th, 1846 (5 Stat. 122).

It has been further argued, that the merits of this case are with the plaintiff, and hence he should not pay costs. But how the real merits between these parties as to originality of the invention, are, the court cannot anticipate till they are tried. The originality is claimed on the one side, and denied by the other; and both the action at law and bill in chancery have been disposed of without a decision on that point. Had that point been settled in favor of the plaintiff, and the cases failed merely on technical grounds, in prosecuting the action, whether of form or substance, it might be proper in the bill in equity to allow no cost to the respondent. Wray v. Barwis, 1 Peake, 70. But that has not been settled in the bill in chancery, and the error in the reasoning of the plaintiff, consists, chiefly, in supposing it has been settled in his favor; that hav-

ing ended in a postponement of any injunction, till the validity or originality of the patent—they being denied—should be tried at law. On the only trial at law, before going into the question of originality, the letters patent of the plaintiff were adjudged to be bad under the act of congress, for want of certainty in the particular part, or combination, claimed to be original, and the plaintiff became nonsuit. Consequently, though in the hearing for an injunction some evidence was offered by the plaintiff to prove priority in making his machine before the defendant made his—and some knowledge of its qualities, by a workman afterwards employed by the respondent, and some apparent resemblance between them, even in defects or mistakes; and thus a strong presumptive case was made out by the plaintiff, as to originality; yet the respondent denied the originality of it, under oath, and put in several affidavits, and some models, to prove an earlier existence and general use of similar grinding machines. But whether this satisfactorily overcame the plaintiff's evidence, I did not decide. On the contrary, I expressly forbore to do it for the various reasons there stated, and continued the bill in chancery till that issue, as to originality, could be tried and settled by a jury.

Another argument is now urged against costs to the respondent, on the ground that the letter and deposition of Wilder were used to mislead, and did mislead, about the old machines and knives, in the hearing as to an injunction. It will be seen, however, that nothing decided in that hearing, or in the trial at law, could be affected by that letter and deposition, whatever was the intent in using them. But on examining them with care, is it at all certain that the ground blade, referred to by Wilder, was likely or designed to mislead; and was not a new one sent with the old machine and old knives, in order that they might be compared together? And it is clear, that "the care-worn and gray witness," to which Wilder poetically refers in his letter, was the old "machine," and not this blade. It is called "machine"—totidem verbis. It is difficult, then, to find any peculiar reason in the case, as yet appearing, or yet ascertained, which renders it inequitable to follow the general rule of allowing cost, as before explained, to the prevailing party. A different state of facts may be settled hereafter, and results reached, which may change the equities as well as law, between these parties; but until that time arrives we must be governed by the situation of things as they now stand. I came to a like conclusion, in Hunter v. Marlborough [supra], and think the exceptions to the general rule should be very few, and rest on very strong grounds. But, although nothing is yet found, by the court or jury, to justify me in refusing cost to the respondent, as inequitable in the bill for an injunction; yet I feel compelled to say, that

several matters were proved against him in that hearing, which made an impression on my mind less favorable to his claims in equity, than to those of the plaintiff. And though I formed no decisive opinion, whether other persons than these parties might have invented and used like machines earlier than either of them, and thought that I should not, for the reasons then given, form a decisive opinion till a trial at law; yet the course of the defendant was not, in some respects, such towards the plaintiff and his machine, as to entitle him to any more costs than are clearly proper under all the facts and circumstances, belonging to both cases. Hence, being obliged to travel and attend here, in the action at law, I deem it just he should not tax travel and attendance, also, in the bill for an injunction, at the same terms, between the same parties. But all the depositions taken and used in the latter case, which were pertinent, and the usual counsel fee, seem to be proper charges, necessary to his defence, and, therefore, are allowed.