ROBINSON v. CROPSEY and others.

---

( In order to determine whether a transaction amounts to a mortgage or a conditional sale :
  If the deed or conveyance be accompanied by a condition or matter of defeazance ex-
  pressed in the deed or even contained in a separate instrument or exist merely in parol
  (let the consideration for it have been a pre-existing debt or a present advance of mo-
  ney to the grantor) the only enquiry necessary to be made is, whether the relation of
  debtor and creditor remains and a debt still subsists between the parties ? For, if it does,
  then the conveyance must be regarded as a security for the payment and be treated in
  all respects as a mortgage.) On the other hand, where the debt forming the considera-
  tion for the conveyance is extinguished at the time by the express agreement of the par-
  ties or the money advanced is not paid by way of loan so as to constitute a debt and lia-
  bility to repay it, but, by the terms of the agreement, the grantor has the privilege of re-
  funding or not at his election, there it must be deemed purchase money and the
  transaction will be a sale upon condition, which the grantor will defeat only by a re-
  purchase or performance of the condition on his part within the time limited for the
  purchase and in this way entitle himself to a reconveyance of the property.
Although equity will relieve against a penalty or forfeiture introduced for the purpose of
  security in a case where compensation can be made, yet, when it is not a question of
  penalty or forfeiture, but of a privilege conferred upon payment of money at a stated pe-
  riod, the privilege is lost if the money be not paid ; and the Court will not restore it to the
  party.

---

*November* 13    The bill in this cause was filed for the purpose of ascer-
1833.    taining the effect of certain articles of agreement entered into

*Mortgage or* between the complainant, Alexander Robinson and one John
*conditional* Sharp, (since deceased) on the first day of May, one thou-
*sale.* sand eight hundred and nineteen ; and the question for the
*Relief* court was, whether a mortgage had been created or only
*against for-*
*feitures.* a conditional sale had taken place ?

In the year one thousand eight hundred and seventeen,
John Sharp was seized of a considerable real estate at
Brooklyn, consisting, amongst other property, of eight lots of
ground designated on a map by the numbers 277. 278. 279.
and 280. fronting on Willow street, and numbers 281. 282.
283. and 284. adjoining in the rear and fronting on Columbia
street.    A large mansion house had been erected at the joint
expense of Sharp and the complainant and was so placed that
one half of it stood upon the lot No. 282. and the other half

upon No. 283. In order to vest a title in the complainant to one half of the house and four of the lots, John Sharp and Henrietta his wife executed to him a conveyance, dated the tenth day of December one thousand eight hundred and seventeen, for lots numbered 277. 278. 283. and 284. It contained full covenants against incumbrances ; and, a warranty. The consideration expressed in the deed was six thousand and five hundred dollars : but no money was paid at the time, because Sharp was then indebted to the complainant—and a future settlement of all accounts relating to the previous indebtedness and to the building of the house was then contemplated.

On the first day of May one thousand eight hundred and nineteen, Sharp was largely in arrear with the complainant ; and they then entered into an agreement, which was drawn up by Sharp, and executed under their hands and seals—to the purport and effect following; Sharp agreed to convey to the complainant the whole of the house and eight lots, free from all incumbrance, except a mortgage previously given thereon to Jacob and John M. Hicks for one thousand dollars and interest from a certain day, which the complainant was to assume and from which he was to keep Sharp harmless, " said sum of one thousand dollars being allowed by the party of " the first part" (Sharp) " out of the purchase money of said " lots." In consideration of which, the complainant agreed to cancel and give up a certain account-current signed by Sharp on or about the sixth day of July one thousand eight hundred and seventeen (the balance being three thousand two hundred and ninety-three dollars and eighty-one cents) and all interest due thereon ; also, to cancel, assign or to make void two bonds and mortgages executed by Sharp and his wife to the complainant in the year one thousand eight hundred and sixteen upon property at Williamsburgh and Newtown and then held by way of collateral security for a prior indebtedness, one bond and mortgage being for fifteen hundred dollars and the other for two thousand two hundred and fifty dollars, with all interest due thereon ; likewise, to assign, cancel or make over a mortgage given by one Hildreth for four thousand five hundred dollars, which covered four of the lots and other property owned by Sharp and

all the interest due thereon, and which mortgage the complainant held by assignment from the mortgagee. All these things were to be completed without unnecessary delay. Sharp further agreed to lease to the complainant part of the ground near the mansion house, which he held under lease from Jacob and John M. Hicks, for nineteen years, at a ground rent of thirty-five dollars per annum and taxes. The agreement then concluded with the following clause : " the " party of the second part," (the complainant) " hereby gives " the party of the first part," (Sharp) " the privilege of re- " deeming said house and lands within one year from this " date for the sum of eight thousand five hundred dollars and " any further money laid out of advantage to said house ac- " cording to a certain account, and the mortgage to Jacob " and John M. Hicks, without any further interest thereon, " the rents being considered equivalent for any interest, to " be the party's of the second part from the date of this."

Shortly after entering into this agreement, Sharp and wife, in fulfilment of it, executed another deed of conveyance in fee simple to the complainant of the remaining four lots, subject to the Hicks mortgage ; and this deed, bearing date the first day of May one thousand eight hundred and nineteen, and the one previously executed under date of the tenth of December one thousand eight hundred and seventeen (and which deeds comprised the eight lots) were duly acknowledged by the grantors and recorded on or about the twentieth day of May one thousand eight hundred and nineteen.

The complainant, Alexander Robinson, entered into possession of the whole of the premises and had remained in possession ever since. Sharp resided within or in the neighborhood of the city of New York until his death, which occurred in the month of July one thousand eight hundred and twenty-four ; and never offered to redeem or repurchase the property from the complainant. As respected the fulfilment of the complainant's part of the agreement of the first day of May one thousand eight hundred and nineteen, it appeared that he paid off the mortgage of one thousand dollars held by Jacob and John M. Hicks and caused it to be cancelled; and also cancelled and gave up the Hildreth mortgage, of

which he was an assignee, and thereby enabled Sharp to
sell the other parts of the property which the latter mort-
gage covered, and out of which sales Sharp paid, in the year
one thousand eight hundred and nineteen, to the complain-
ant, for the purpose of liquidating outstanding bills incurred
in building the mansion-house for which Sharp and the com-
plainant were jointly liable, the sum of one thousand dollars.
There was no proof of the complainants having ever given
up or of his cancelling the account-current mentioned in the
agreement; nor of his afterwards attempting to make any
use of it as against Sharp or enforcing payment of the bal-
ance. Still, the mortgages upon the Williamsburgh and
Newtown property he did not give up or cancel, but on the
contrary, having been sued jointly with Sharp for a demand
growing out of the building of the house (beyond what the
one thousand dollars was intended to compensate) and a re-
covery being had and the amount of it paid by the complain-
ant, he filed a bill in this court in the month of April one
thousand eight hundred and twenty four in order to enforce
the mortgages made upon the Williamsburgh and Newtown
property and to be reimbursed. He alleged it to have been
a part of the agreement of the first day of May one thousand
eight hundred and nineteen—although omitted in the wri-
ting by mistake or through fraud of Sharp—that the mort-
gages were to remain for his indemnity against the demand
thus put in suit. The cause came before the chancellor,
who held, the mortgages were valid liens for the amount
which the complainant had been obliged to pay; and his
honor decreed a foreclosure and sale for the purpose of satis-
fying the same. The property was sold; and out of the
proceeds the complainant was reimbursed.

The bill in the present cause was filed in the month of De-
cember one thousand eight hundred and twenty-seven. The
defendants (except Edmund Kirby and Maria his wife,)
were Henrietta the widow and Jane Sharp and others chil-
dren of John Sharp deceased; while Kirby and wife were
creditors by judgment recovered against Sharp in his life
time.

The bill alleged that, notwithstanding the complainant in-
tended and supposed himself to be contracting for a purchase

1833.

ROBINSON
v.
CROPSEY.

of the property, subject to the right of Sharp to repurchase within one year and not after, yet he was then advised that the deeds of conveyance of the property, taken in connection with the agreement (which was an instrument under seal and recorded) might be deemed a mortgage and not a conditional sale, in which case the heirs and judgment creditors of Sharp would be entitled to redeem ; and, although no right of redemption was set up, yet he was apprehensive lest, at some future day, such claim might arise, and was, consequently, desirous of having the nature and extent of his estate and interest in the property determined by the court.   He prayed to have the agreement decreed to be one for a conditional sale ; and, inasmuch as Sharp had not availed himself of the condition of repurchasing the property, that the estate and title of the complainant might be declared absolute and free from any lien, claim or equity of redemption by virtue of such agreement: or, if the conveyances, taken in connection with the agreement, made the estate and interest of the complainant a mortgage right only, then that an account might be taken and the defendants be decreed to redeem or be foreclosed and the premises sold to satisfy the amount which should be found due to the complainant, with costs of suit.

Mr. *J. L. Mason* and Mr. *John Duer* for the complainant.

Mr. *C. F. Grim* and Mr. *Wood* for the defendants.

*March* 11.
1834.

THE VICE-CHANCELLOR:—I do not perceive, in the proceedings between the parties, any thing inconsistent with a purchase under the agreement of the first of May one thousand eight hundred and nineteen : provided the agreement itself and the circumstances of the case will admit of its being so considered.

The two mortgages were held by the complainant, at the time of entering into the agreement, as security collateral to the account current ; and there is nothing incompatible with this, in the complainant's stipulation to give up the account current and the money due upon it as a part of the consideration for a purchase and to " assign, cancel or make

void" the mortgages so far as they were a security collater- al to the account—nor in the agreement or stipulation on the part of Sharp, that the same mortgages should stand as a security for another purpose, namely, of protecting the complainant from loss in the event of an unfavorable termination of the suit at law commenced against them. The chancellor must have been satisfied, by evidence, of such being the understanding and intention of the parties or he could not have made the decree. The written agreement was set out in the answer of the widow, who was the principal defendant in that cause; and it was relied upon by her, (and claimed by the bill) as an agreement for the purchase of all the interest which her husband, John Sharp, had in the house and the eight lots of ground. And she insisted, as the deeds conveying the same had been executed, that the two mortgages and the account current ceased to be of any effect, except as part payment of the purchase money; and denied all knowledge of any agreement beyond what was contained in the written instrument. However they may have differed as to the extent of the agreement, it is obvious, from the pleadings, that the complainant and Mrs. Sharp considered a sale to be the result and the former a purchaser of the Brooklyn property and not a mere mortgagee by virtue of the agreement. Still, this does not, by any means, conclusively determine the character of the transaction. The court was not called upon to solve the point; and any admission or statement of Mrs. Sharp in her answer could not affect the rights of her then co-defendants, nor of those who are now in a similar position.

The question then is, upon the effect of the written agreement: whether, under the circumstances disclosed, it was a conditional sale or a mere mortgage transaction? If the former, the right to repurchase or open the sale is gone by lapse of time; but should it turn out to be a mortgage, then it is not too late for the defendants to be let in to redeem.

It does not become necessary to go into an examination of the numerous cases in the books where the question has arisen. There appears to me a marked test in all such cases. If the deed or conveyance be accompanied by a condition or matter of defeazance expressed in the deed or even contained

1833.

ROBINSON
v.
CROPSEY.

1833.

ROBINSON
*v.*
CROPSEY.

in a separate instrument or exist merely in parol—let the consideration for it have been a pre-existing debt or a present advance of money to the grantor—the only enquiry necessary to be made is, whether the relation of debtor and creditor remains and a debt still subsists between the parties ? For if it does, then the conveyance must be regarded as a security for the payment and be treated in all respects as a mortgage : *Slee* v. *Manhattan Company*, 1. Page's C. R. 56. On the other hand, where the debt forming the consideration for the conveyance is extinguished at the time by the express agreement of the parties or the money advanced is not paid by way of loan so as to constitute a debt and liability to repay it, but, by the terms of the agreement, the grantor has the privilege of refunding or not at his election, there it must be deemed purchase money and the transaction will be a sale upon condition, which the grantor can defeat only by a repurchase or performance of the condition on his part within the time limited for the purchase and in this way entitle himself to a reconveyance of the property.

All this is fairly deducible from the cases referred to upon the argument ; and more particularly from *Goodman* v. *Grierson,* 2. B. & B. 274. There, Lord *Manners* held, that a fair criterion, by which to decide whether a deed be a mortgage or not was, by asking : are the remedies mutual and reciprocal and has the grantee all the remedies to which a mortgagee is entitled ? And if, upon a sale under a decree for a foreclosure, the proceeds should prove insufficient to discharge the amount and there could be no remedy over for the deficiency upon any bond, covenant or implied assumpsit, he considered it as decisive in showing the transaction not a mortgage, but a conditional sale. And in *Conway's Executors* v. *Alexander*, 7. Cranch, 218., Chief Justice Marshall observes, " the enquiry must be, whether the contract, in the specific case, is a security for the repayment of money or an actual sale. If a security in the nature of a mortgage is intended, it is necessary that the mortgagee should have a remedy against the person of his debtor ;—if this remedy really exists, its not being reserved in terms will not affect the case ; but the remedy must exist, in order to justify a construction which overrules the express words of the instrument."

If we apply the principle contained in these decisions to the case in hand, it will not be difficult to arrive at a correct result. The agreement provides for cancelling the account current with the mortgages held as collateral to it, as well as the Hildreth mortgage. These matters were evidences of Sharp's indebtedness to the complainant; and the surrender of them formed a part of the consideration upon which the deeds were to be executed and delivered. The moment they were delivered, the account and the several mortgages ceased to be effectual in the hands of the complainant as general evidences of debt; they became extinct; a debt no longer existed; the same having been converted, by force of the agreement, into a payment of so much of the purchase money or satisfied by conveying the property to the complainant and vesting him with title and possession. In this point of view the transaction is to be regarded as a sale; and I am at a loss for sufficient grounds upon which to give it a different construction. There is nothing in the agreement or the facts of the case to show or from which to infer an intention to let the debt remain with a reciprocity of remedies as between mortgagor and mortgagee. The circumstance of the complainant's afterwards claiming to hold the two mortgages on the Williamsburgh and Newtown property for another and distinct purpose, under a verbal agreement which he succeeded in establishing, has been shown already not to be incompatible with the extinguishment of the debt for which those mortgages were originally intended as a security.

Then, as to what appears upon the face of the written agreement itself:—Sharp was to convey the house and eight lots to the complainant by deeds absolute, containing covenants for title and against all incumbrances, except the Hicks' mortgage; and the complainant was, not only to take the property subject to such mortgage, but, also to assume the payment of it at all events and keep Sharp harmless against his liability on account thereof.

This was certainly requiring from the complainant more than is ordinarily demanded from a person taking a mere mortgage security upon property already under hypothecation; and it goes far to show that the parties did not intend it to be a second mortgage. It is rendered still clearer that more than

19

a mortgage security was intended, by the reason given in the agreement for the complainant's assuming the debt due to Hicks: " said sum of 1000. dollars being allowed to him by Sharp out of the purchase money of said lots." Thus expressly acknowledging the transaction to be a sale. They could use the words " purchase money" upon no other proper ground.

There is another feature of the agreement having a tendency to mark its character. I refer to the part whereby the complainant becomes a sub-lessee of a portion of the contiguous land for a term of nineteen years at a rent of thirty-five dollars per annum. It would hardly seem to be consistent with a mere mortgage interest in the complainant for him to bear this additional burthen. As a purchaser and with a view to a permanent enjoyment (and which the fact would indicate) he might be willing to do so; but not, if he were to hold the property only as security for a subsisting debt.

I think it is manifest, from this clause in the agreement that the parties intended a defeasible sale and not a mere mortgage. Nor is there any thing in the other parts of the writing at variance with tihs conclusion. The " privilege of redeeming" (within one year,) are words not necessarily confined to the case of a mortgage. They are equally applicable to a sale where the seller has secured the right of taking back the property upon a repurchase; and " redeem", "repurchase" and words of like import, may be used indiscriminately to convey the same meaning in transactions of this kind.

Then, as to the sums of money specified to be paid upon redeeming the house and lands. These are not mentioned as monies owing in the shape of a debt or demand which Sharp was liable or bound to discharge. The speaking of interest as being compensated by rents, does not necessarily show it to have been interest upon a subsisting debt: for it equally well applies to purchase money, provided such money was to be refunded. Judging of the transaction from what the parties have subscribed in writing for the purpose of making known their meaning, the whole appears to be a consistent act. It will bear no other safe construction than an intended defeasible sale, founded, partly, upon a pre-existing indebtedness which thereby became satisfied and extin-

guished: and not a mortgage to secure a subsisting debt. **1833.**
Extrinsic evidence and circumstances out of the written agree-
ment have been relied upon, in argument on both sides, as **ROBINSON**
elucidating the nature of the agreement and ascertaining its **CROPSEY.**
precise meaning. But, it is not necessary I should go into
further particulars on this subject. They do not change the
views already expressed.

One further point, however, remains to be noticed. It is
contended, for the defendants, that even should this be con-
sidered a conditional sale and not a mortgage or security for
a subsisting debt, yet a Court of Equity may relieve against
a forfeiture for a breach in failing to repay the money in time,
because compensation can be made, and, under the circum-
stances, such relief ought to be granted. It is a familiar
head of Equity jurisdiction to relieve against a forfeiture or
penalty, upon the principle of making compensation. But
the present is not a case of forfeiture. The owner of the
property, Mr. Sharp, sold his estate ; and there is no proof
of the price having been inadequate. He made it a part of
his contract—and I must presume the price was fixed with
reference to the event—of having the privilege of redeem-
ing, or, which is the same thing, repurchasing within one year
by paying a certain amount of money. Time, consequently,
was of the essence of the contract ; and performance neces-
sary to regain the estate with which, by his voluntary con-
tract, he had parted :—not that non-performance works a for-
feiture and divests a title and estate already in him.

In such cases, equity does not interfere : because it would
be varying the express terms of the contract and giving to
the party a benefit of extension in point of time for which
he has not stipulated. No fraud, accident or mistake is char-
ged as a cause of his not having availed himself of the priv-
ilege within the time appointed. The true principle will be
found in the recent case of *Davis* v. *Thomas*, 1. Russ. & M.
506., decided, in the first instance, by the master of the Rolls
and afterwards upon an appeal by Lord Chancellor Brougham,
and this case may be cited as having a strong bearing, in
other respects, upon the present one. There, the plaintiff
mortgaged an estate and then, in satisfaction of the mortgage
debt and in consideration of an additional sum paid to him, re-

leased to the defendant, the mortgagee, the equity of redemp-
tion.   Some months afterwards the defendant demised to the
plaintiff the  premises, for a term of  ninety nine  years, at a
certain rent ;  and, upon the lease, stipulated that in case the
the latter  paid the rent regularly, he should be at liberty, at
any time within five  years, to repurchase the premises at a
specified price, but if  default were  made in  payment of  the
rents at  the  stated  periods,  then  the  agreement was to be
void.   The  plaintiff failed to  pay the  rents at the  periods
stated ; but, within the five years, he  applied to repurchase
and, at the same time, tendered the arrears.   The  defendant
refused to permit the repurchase ;  and the bill was then filed
by the plaintiff to have  the benefit of the stipulation or to be
let in to redeem.   Upon neither ground was the bill sustain-
ed.   The  mortgage no  longer existed ;  a right of redemp-
tion was gone.   And with  respect to  the repurchase, it was
held to be a privilege  conferred upon him, provided he com-
plied strictly with his contract ;  and not having done so and
as no fraud, surprise  or accident  was alleged, therefore  he
had lost the right.   The  principle of the  decision upon the
last point is this : that although the court will relieve against
a penalty or forfeiture introduced for  the purpose of securi-
ty in a case where compensation can be  made, yet,  when it
is not a  question of penalty or  forfeiture, but of a  privilege
conferred  upon  payment of  money at a  stated  period, the
privilege is lost if the money  be not paid  and  the court will
not restore it to the party.   This is a sound rule.

I shall decree  that the defendants, as the representatives
of John Sharp or  as  standing in his  place, have  no right
to redeem or  repurchase under  the  agreement of the  first
day of May one  thousand eight  hundred and  nineteen.
This is all the complainant has asked for upon the hearing.  I
am of opinion he must pay the costs of the defendants in the
present suit, saving, however, so  much as may have accrued
from the examination of Mrs. Sharp as a witness.   The bill
was filed for the complainant's ease and to quiet his own ap-
prehensions.   These defendants had not questioned or even
threatened to impeach his title.   I do not perceive there has
been unnecessary litigation on their  part.   Several of  them
are infants.   The  bill is one  of  double aspect.   It seeks an

alternative relief; the defendants had a right to point out and insist upon what was most favorable to them; and in doing so, although they have not succeeded, I am not disposed to leave them burthened with costs. There are instances of defendants setting up claims of right and failing, and yet are considered as entitled to costs against a complainant: *Beames on costs*, 94. and cases there; 2. *Chitty's Eq. Dig.* 933. (*u*); *Ib.* 934. (*w*)