# FREDERICK T. STAHL v. WILLIAM A. DEHN.

72 | 645
127 | 169

*Mortgages—Defeasible purchase—Redemption—Sale— Contract for repurchase.*

1. Defeasible purchases are narrowly watched, and courts of equity always favor the right of redemption.

2. From the mere fact of an agreement to reconvey, either with or without an advance in price, an absolute conveyance will not be turned into a mortgage.

3. Contracts for repurchase, made contemporaneously with conveyances of real estate, absolute in form, are sometimes strong evidence tending to show that the conveyances are intended to be mortgages; but where it appears that the parties really intended an absolute sale, and a contract allowing the vendor to repurchase, such intention must control, and to ascertain the intention of the parties the court will look beyond the writings to the circumstances surrounding the transaction.

Appeal from Wayne. (Brevoort, J.) Argued October 10, 1888. Decided November 28, 1888.

Bill to remove cloud from title. Defendant appeals. Decree affirmed. The facts are stated in the opinion.

*Elliott G. Stevenson* and *Charles S. McDonald,* for complainant, contended:

1. A conveyance with the right of repurchase is not necessarily a mortgage; citing *Conway's Ex'rs v. Alexander,* 7 Cranch, 237; *Glover v. Payn,* 19 Wend. 518; *Slowey v. McMurray,* 27 Mo. 113; *Hill v. Grant,* 46 N. Y. 496; and to ascertain the intention of the parties the court properly looked beyond the deeds and writings at the circumstances of the contract; citing *Brant v. Robertson,* 16 Mo. 129; *O'Neill v. Capelle,* 62 Id. 202.

2. Nothing short of clear, precise, explicit, unequivocal, and absolute proof should convert an absolute deed into a mortgage; citing *Plumer v. Guthrie,* 76 Penn. St. 441; *Todd v. Campbell,* 32 Id. 250; *Burger v. Dankel,* 100 Id. 113; *Logue's Appeal,* 104 Id. 136; *Hartley's Appeal,* 103 Id. 23; *Huoncker v. Merkey,* 102 Id. 462; *Rowand v. Finney,* 96 Id. 196.

*James H. Pound,* for defendant, contended:

1. Under defendant's theory, this paper is but a mortgage; citing *Swetland v. Swetland,* 3 Mich. 482; *Batty v. Snook,* 5 Id. 231; *Enos v. Sutherland,* 11 Id. 538.

2. In cases of doubt, the presumption is always in favor of a permission to redeem; citing *Rice v. Rice,* 4 Pick. 349; *Russell v. Southard,* 12 How. 139. ·

3. Whatever form a contract or instrument may have, if the attending circumstances show it to have been intended as security for a debt or a loan of money, or anything but a clear-cut bargain and sale, a court of equity will always decree redemption; citing 4 Kent, Com. 142; *Taylor v. Luther,* 2 Sumn. 228; and an attempt to convert such a conveyance into an absolute one is a fraud upon the law; citing *Rogan v. Walker,* 1 Wis. 527; *Woodward v. Pickett,* 8 Gray, 617.

4. If several instruments are made and delivered the same day between the same parties, in relation to the same subject-matter, they are regarded as parts of one instrument, and will be construed together; citing 2 Washb. Real Prop. 46, § 8; *Bayley v. Bailey,* 5 Gray, 505; *Murphy v. Calley,* 1 Allen, 107.

5. An absolute deed, with a bond or separate defeasance or agreement to reconvey the estate upon the payment of a certain sum of money, constitute a mortgage, if the instruments are of the same date, or are executed and delivered at the same time and as one transaction, in which case it is a conclusion of law that they constitute a legal mortgage; citing *Jeffery v. Hursh,* 58 Mich. 257.

LONG, J. The bill was filed in this cause in the Wayne circuit court, in chancery, to remove a cloud from the title of complainant's lots, lying on the Boulevard in the city of Detroit.

It appears that sometime in March, 1885, the defendant called upon complainant, who he had been advised had a horse and buggy for sale, valued at $300, and desired to purchase, if the complainant would take in exchange his two Boulevard lots, which he placed at $600, and would pay the mortgage thereon, then amounting, with interest, to the sum of $307.

After some talk, the parties went to the law-office of C. B. Howell, in Detroit, where the arrangement was

completed, and Mr. Howell was directed to draw the papers. Defendant executed and delivered to complainant a warranty deed of the premises, in consideration of which complainant turned out to defendant his horse and buggy, and was to pay the mortgage on the lots. Before the parties separated, another paper was drawn by Mr. Howell, and executed by complainant, and delivered .to defendant. The exact time when this paper was drawn is in dispute between the parties. Whether it was at the exact time with the execution and delivery of the deed, or was an after arrangement, the parties are not agreed. It is conceded, however, to have been made before the parties separated on that day. After this paper was executed by complainant, Mr. Howell made a copy. Dehn signed it, and delivered the same to complainant. The copy reads as follows:

"Whereas, the undersigned has this day purchased of Dr. Wm. A. Dehn, of Detroit, lots twenty-four (24) and twenty-five (25) in Maybury's subdivision of lot 18, of Mandlebaum's sub. of fractional sections 1 and 36, being corner of Boulevard and Seventh streets, I hereby agree to reconvey to said Dehn said lots within six months from this date, for the sum of six hundred and twenty-five dollars and such expense as said Stahl is put to in paying taxes, etc., in the mean while upon said lots, and interest at seven per cent. on said purchase price.

"F. T. STAHL.

"Detroit, March 23, 1885.
"Witness: C. B. HOWELL.
"I certify that the above is a true copy of an agreement dated this ——— day of ———. W. A. DEHN."

It is the claim of the complainant by his bill that this paper so executed and delivered by him to defendant was simply an option on the part of defendant to repurchase the property within the time limited, and at the price specified, and, defendant having failed to exercise it within the time, complainant has a right to have the premises

discharged from the cloud created upon the title by defendant placing the same upon record; that his deed conveyed to him an absolute title. It is contended by complainant that at the time he executed the paper he did not acknowledge its execution before any officer, and that the paper, a copy of which was given him, drawn in Mr. Howell's handwriting, and certified by defendant, did not contain at that time any certificate of acknowledgment, nor was there but one witness to its execution.

The original of this paper was offered in evidence by defendant, and it appears that it contains a certificate of acknowledgment by C. B. Howell, notary public, and is witnessed by Mr. Howell and Mr. L. G. Wilcox. The certificate of acknowledgment bears date the same day as the paper, and is a blank form cut from a blank, and pasted upon the paper executed by complainant, but the certificate is filled out and signed by Mr. Howell. This paper was not recorded until August 4, 1885.

Defendant contends that the two papers were executed at the same time, and as one and the same transaction; and the giving of the deed and the agreement to reconvey was intended by the parties as a mere security for the price of the horse and buggy, and that the two papers constitute a mortgage. This is the only question in the case.

On the hearing in the court below the complainant prevailed, and had a decree as prayed in his bill, removing the cloud from his title. Defendant appeals.

The testimony was taken in open court. Considerable testimony was taken by the parties as to what took place and what was said by the parties before and at the time of the execution of these papers, and some contradictions arise. The parties are not agreed upon many of the claimed facts. It very satisfactorily appears, however, that these lots were valued in the exchange by the defend-

ant at about their fair market price, and that very soon after complainant obtained his deed he paid off and had discharged this $307 mortgage upon the premises. By the terms of the agreement, the complainant was to pay taxes, and was to reconvey only on condition that the defendant paid the amount of moneys expended in addition to the principal amount, and an additional $18 and interest. The consideration paid was equal to the whole value of the property. There was no legal obligation on the part of the defendant to repay the consideration money, and in fact no offer was made to repay.

Judging from the papers themselves, this was simply a sale of the land for a consideration paid at the time, with an agreement to resell at a future day at an advanced price; the resale depending upon the election of the defendant. There were no previous dealings between the parties, and no debt was created by the transaction. Defeasible purchases are narrowly watched, and courts of equity always lean strongly in favor of the right of redemption; still it is well settled that from the mere fact of an agreement to reconvey, either with or without an advance in price, an absolute conveyance will not be turned into a mortgage. *Glover v. Payn,* 19 Wend. 518.

In *Robinson v. Cropsey,* 2 Edw. Ch. 138, there had been previous dealings between the parties, but the debt was extinguished at the time of the conveyance, and the vice-chancellor held that an absolute deed, with a separate agreement for the right to redeem within a year, was not a mortgage, but a sale on condition. Contracts for repurchase, made contemporaneously with conveyances of real estate, absolute in form, are sometimes strong evidence tending to show that the conveyances are intended to be mortgages; but where it appears that the parties really intended an absolute sale, and a contract allowing the vendor to repurchase, such intention must control.

*Hanford v. Blessing*, 80 Ill. 188; *Smith v. Crosby*, 47 Wis. 160 (2 N. W. Rep. 104).

To ascertain the intention of the parties whether the deed was absolute in fact as in form, or merely a conveyance to secure an indebtedness, the court will look beyond the writings to the circumstances surrounding the transaction; and, judging from such surrounding circumstances, it appears clear that the parties at the time regarded it as an absolute sale, with simply an option on the part of the defendant to repurchase at an advanced price. No talk was had about the purchase of the horse on time, and giving security for its payment, but the whole arrangement, as appears by the record, was that defendant was to purchase the horse and give in exchange therefor the lots in question, subject to the mortgage, which complainant was to pay, and did pay, and that the defendant might at his option repurchase the lots at an advanced price, if he exercised that option within six months from the date of the sale. It appears that the defendant was advised some time after the six months had elapsed that he still had a right to redeem, and the whole transaction could be treated as a mortgage, instead of an absolute deed. We are clearly of the opinion, however, that the parties did not so understand it at the time, and all the circumstances surrounding the transaction favor most strongly the complainant's claim that it was an absolute sale, and not intended as a mortgage.

The decree of the court below must be affirmed, with costs.

The other Justices concurred.