SOWLES v. WILCOX.

MORTGAGES—ABSOLUTE CONVEYANCE—CONDITIONAL SALE.

Where land mortgaged to indemnify a surety on an appeal bond is afterwards deeded to him by absolute conveyance, with the understanding that, if necessary, it may be sold to pay the judgment debt, but that the mortgagor shall have the right to pay it himself if able, or to defeat it by legal proceedings, the conveyance operates as a mortgage, and not as a conditional sale. GRANT, J., dissenting.

Appeal from Eaton; Smith, J. Submitted April 2, 1901. Decided June 17, 1901.

Bill by Mary A. Sowles against Lucius H. Wilcox, George Wilcox, Alvira Wilcox, Norman Sowles, and George N. Berry to declare a conveyance absolute in form

to be a mortgage, and for an accounting.    From a decree dismissing the bill, complainant appeals.    Reversed.

*W. A. Coutts, Huggett & Dann,* and *Cahill & Wood,* for complainant.

*Powers & Stine,* for defendants Wilcox.

GRANT, J.    A suit was brought against Nathaniel Sowles, the husband of complainant, and judgment obtained against him for $3,059.66 and $237.40 costs of suit. While that suit was pending, Mr. Sowles deeded the land here in controversy—a farm consisting of 144½ acres—to his wife, the complainant, and a farm of 80 acres to his son, defendant Norman Sowles.    These deeds were without consideration, and were made for the purpose of preventing Mr. Sowles' creditors from enforcing their claims. That case was brought to this court, and affirmed.    105 Mich. 31 (62 N. W. 1000).    Mr. Sowles requested the defendant Lucius H. Wilcox and one Woolpert to sign a bond with him on appeal to this court, and thus prevent the sale of the land upon execution, which had been issued against Mr. Sowles, and under which a levy had been made.    To secure Messrs. Wilcox and Woolpert, complainant executed a mortgage upon this farm to them as security.    A motion for rehearing was made and denied. Mr. Sowles refused to pay the judgment, and suit was brought upon the bond.    That suit went against him, and he again appealed to this court, and the judgment was affirmed.    109 Mich. 481 (67 N. W. 530).    Judgment was rendered upon the bond against Sowles, Wilcox, and Woolpert for $3,848.35 damages, and costs, $44.20.    The costs in this court were $67.    Both of these suits were carried on at the request of Mr. Sowles, with the approval of the complainant.

Another suit was instituted by one Shoemaker in the circuit court for the county of Kent, in chancery, against Mr. Boyer and his attorneys, to establish a claim to a portion of the judgment.    Mr. Sowles, Wilcox, and

Woolpert were made defendants. In that suit another attempt was made to defeat the judgment. Mr. Sowles filed a cross-bill, charging that the judgment was obtained by fraud. Upon the hearing the bill was dismissed. Meanwhile execution had been levied upon the judgments in the circuit court and this court, and the lands of Sowles, Wilcox, and Woolpert levied upon, and sold at execution sale. After the affirmance of the first case in this court, complainant executed a warranty deed of the farm to Wilcox and Woolpert, the consideration mentioned therein being $4,000, which was the penal sum of the bond. Neither Mr. Sowles nor Wilcox and Woolpert redeemed from these sales, and, shortly before the time of redemption expired, complainant surrendered possession of this farm to Wilcox and Woolpert; and Norman Sowles executed a deed of the 80 to them on the same date, April 26, 1897. Wilcox and Woolpert claimed that the farm of the complainant was not sufficient to pay the judgment, interest, and costs. Subsequently Mr. Wilcox paid Mr. Woolpert $175, and took from him a quitclaim deed of the two farms. This $175 was claimed to be for expenses which Mr. Woolpert had paid out for Mr. Sowles in the various suits. Wilcox then borrowed of defendant Berry $4,500, the amount necessary to redeem, gave him a mortgage upon this farm, and paid the amount in satisfaction of the judgments. Wilcox soon after sold the 80 acres for $1,500, to one Hill, who was conceded to be an innocent purchaser, and about the same time he sold his own farm of 111 acres, on which he realized $3,000, which was paid on the Berry mortgage.

Wilcox, in 1897, took possession of the farm, discharged the mortgage of record, has been in possession since, paid the taxes, and made improvements. Neither complainant nor her husband made a claim to him that the deed in this case was executed as additional security, or offered to redeem, until this bill was filed, November 16, 1899,—two years and six months after possession had been surrendered by complainant to Wilcox. The bill alleges that

the deed was a mortgage, prays for an accounting to determine the amount due, and for leave to redeem. The case was heard in open court, and the bill dismissed.

Complainant claims that the deed merely operated to change the form of the security from that of an ordinary indemnity mortgage to that of a deed absolute upon its face, and invokes the maxim that "once a mortgage, always a mortgage." When one seeks to convert such a deed into a mortgage, the proof must be clear and convincing. The written instrument is presumed to express the intention of the parties. *Howland* v. *Blake*, 97 U. S. 624; *Etheridge* v. *Wisner*, 86 Mich. 173 (48 N. W. 1087). This is elementary, and no other authorities need be cited. An agreement to reconvey, at the time a deed is executed, is not sufficient to justify courts in holding the deed a mortgage. *Stahl* v. *Dehn*, 72 Mich. 645 (40 N. W. 922). A conditional sale will not be converted into a mortgage where it satisfactorily appears that a conditional sale was intended. *Cornell* v. *Hall*, 22 Mich. 377. A deed absolute, in payment of a debt, with a separate agreement to reconvey within a year, was held not to be a mortgage. *Robinson* v. *Cropsey*, 2 Edw. Ch. 138; *Holmes* v. *Grant*, 8 Paige, 243. A deed absolute at the time of execution cannot be turned into a mortgage by the subsequent acts of the parties. *Swetland* v. *Swetland*, 3 Mich. 482. Where the grantor reserved the privilege to redeem at any time within 10 years by paying the purchase price and interest, at the option of the grantor, the transaction was held to be a conditional sale, and not a mortgage. *Blumberg* v. *Beekman*, 121 Mich. 647 (80 N. W. 710).

Authorities might be multiplied upon this branch of the law. The controlling question is: What was the intent of the parties? Was there a mutual understanding or agreement between complainant and Wilcox and Woolpert that the absolute deed was intended only as a mortgage? There is no legal obstacle to a conveyance by the mortgagor to the mortgagee of his equity of redemption

in satisfaction of the debt, or to apply the value of the land upon the debt, and save the expense of foreclosure. Wilcox and Woolpert had a complete mortgage title. They could foreclose, and, in the course of a year and three months, obtain the legal title. No object on the part of Wilcox and Woolpert is apparent in obtaining this deed, other than to save the expense of foreclosure. Even under complainant's theory, the deed was no greater or better security than the mortgage which they already had. If the deed was a mortgage, they were in no better position after its execution than before. Mrs. Sowles might have redeemed before the execution of the deed. It is significant that, though she was in court during the hearing in the court below, she was not called as a witness, and the failure to call her is not satisfactorily explained. Her solicitors sought mainly to make their case by calling Mr. Wilcox as their own witness, treating him as a hostile witness, and subjecting him to a most rigid cross-examination. While it is true that, under this searching examination, he spoke of the deed as an indemnity and as a security, I think it evident that he used these terms not in the sense of creating a lien upon the land, but as a payment of the debt. Mr. Sowles, a witness for the complainant, testified:

"Q. He [Wilcox] paid that judgment for you, didn't he?

"A. Yes, sir.

"Q. You don't owe him for that?

"A. No, sir.

"Q. Why don't you?

"A. Because we give the land in security so he can get his pay out of it.

"Q. You gave him the land to pay it?

"A. No.

"Q. Don't you owe him anything?

"A. I claim not. He was to take his pay out of the land, and give us the balance from the 145 acres."

And again he testified: "He [Wilcox] agreed to sell the property, and give me a balance."

Under this testimony the absolute title was conveyed, coupled with a trust resting in parol, under which Wilcox agreed to sell, and pay to Mr. Sowles any surplus that might remain over the amount due Wilcox.

Complainant and her husband knew that these lands and the lands of Wilcox and Woolpert were sold on the execution; that the time of redemption was about to expire; that not only would complainant lose this land upon failure to redeem, but also that Wilcox and Woolpert would lose theirs; that this farm had been neglected, and was depreciating in value; that defendant had sold his farm to pay the judgment; that he was occupying and improving this farm as though it were his own, and had done so for $2\frac{1}{2}$ years without any protest. She had never asked him to sell the land, and pay to her any surplus that might remain. She had constructive, if not actual, knowledge that the mortgage was discharged. These acts tend very strongly to show the intention of the complainant in executing the deed. They are inconsistent with the theory that she considered her deed a mortgage. The testimony of Mr. Wilcox is that, at the time complainant surrendered possession and Norman gave the deed of the 80, he and Mr. Woolpert settled the whole matter, and released Mr. Sowles from any further liability to them. The testimony of defendant Norman sustains that of Wilcox. Nathaniel Sowles admitted that he asked Wilcox and Woolpert if they would take both places, and "square it up," but denies that he made the agreement. Up to this time we are satisfied that there was a parol understanding between Sowles and Wilcox and Woolpert that he might pay the amount due, and, if he did, that the land should be redeeded to complainant by them. I think that this was a conditional sale, within the authorities above cited. They did not redeem, and probably could not, and the agreement of April 26, 1897, put an end to the agreement to reconvey, and operated as a complete settlement between the parties.

Charges of fraud and duress are made against Wilcox

and Woolpert in procuring the deed from Norman. Mr. Woolpert was dead when this suit was tried. Wilcox, Nathaniel Sowles, and Norman Sowles are the only parties who testified to what was said when that deed was made. The circuit judge, who saw the witnesses, was in better position than are we to determine the disputed questions of fact. He found that Wilcox acted in good faith, and that all that had been done in the case was at the instigation and request of Nathaniel Sowles, and that complainant knew the situation from time to time. We concur in his conclusion.

The record in this case is of unnecessary length. It contains 525 pages. The case was made by taking the stenographer's minutes, and procuring the certificate of the judge thereto. It contains many pages of colloquies between counsel, and counsel and the court. The witnesses were taken over the same ground several times. While this may be sometimes permissible on cross-examination, where counsel doubt the truthfulness of the witness, yet, where there is no substantial discrepancy in the statements, such repetition should be eliminated in making a case for appeal. The testimony could have been much abbreviated, thus saving expense to the litigants and labor on the part of this court. The testimony in such cases should be condensed, and, so far as possible, put in narrative form.

Decree should be affirmed, with costs.

MONTGOMERY, C. J. In my opinion, the conveyance of 144½ acres by deed was a conveyance by way of mortgage. I reach this conclusion upon these grounds: The original mortgage was an indemnity mortgage. When the deed was given, it became apparent that some steps must be taken to raise the money with which to meet the liability of this judgment. The deed in question was made with the understanding, as I think the record shows, that the property should be sold, if necessary, to meet the liability. The testimony of the defendant Wilcox was, in part, as follows:

"*Q.* You held that deed for the purpose of indemnifying you against loss by reason of your suretyship?

"*A.* That was a *bona fide* deed. It was not a trust deed, or anything of the kind; it was a *bona fide* deed.

"*Q.* Explain what you mean by not holding it in trust.

"*A.* It was in case Mr. Sowles did not pay the judgment, that we could dispose of the property, and pay it.

"*Q.* You were to dispose of the property, and pay that judgment if he did not?

"*A.* Yes, sir.

"*Q.* Why didn't you do so?

"*A.* He said, ' Fight as long as there is a dollar left.'

"*Q.* Your only purpose in holding that deed was for the purpose of discharging your liability upon the bond?

"*A.* The purpose was to pay the judgment when he got done fighting, if there was enough to pay it.

"*Q.* To discharge your liability on the bond?

"*A.* Why, and other expenses incurred with it."

It also appears that, after the deed was given, further efforts were made to defeat the judgment. Had this been accomplished, it would hardly be contended that the absolute title to this land passed to the grantees. This is not a case where there is a deed with an agreement to reconvey to the grantor, as in *Cornell* v. *Hall*, 22 Mich. 377, but it is a conveyance with the purpose of enabling the grantor to make a sale and meet a liability. I am at a loss to understand what essential ingredient of a mortgage is lacking. It is true, Mr. Sowles testified that defendants were to take their pay out of the land, and give the balance to complainant; but it is apparent from his whole testimony that it was intended that he himself should have the right to pay the judgment, if able to, or to defeat it by legal proceedings, if he could do so.

I think the decree should be reversed, and an accounting ordered.

HOOKER and MOORE, JJ., concurred with MONTGOMERY, C. J. LONG, J., did not sit.