CARVETH *v.* WINEGAR.

1. MORTGAGES—DEED ABSOLUTE—EVIDENCE.

In a suit to declare a warranty deed a mortgage, evidence of the circumstances surrounding the transaction, the conversation at the time, and the value of the land, is admissible.

2. SAME.

A deed absolute in form, accompanied by a contract to return to the vendor one-half of the proceeds of the land if sold within a year, after deducting the amount of an outstanding mortgage, the vendor's debt to the vendee, and the value of certain property deeded by the vendee to the vendor, *held*, under the evidence, to amount to a mortgage.

3. SAME—INNOCENT PURCHASER.

  The existence of an innocent purchaser, who has made improvements, will not prevent the court from declaring a deed absolute in form to be a mortgage, if the purchaser can be fully protected on the accounting.

Appeal from Ionia; Davis, J. Submitted January 15, 1903. (Docket No. 43.) Decided April 21, 1903.

Bill by Thomas Carveth and Marietta Carveth against Clarendon C. Winegar and George Winegar to declare a conveyance absolute in form to be a mortgage, and for an accounting. From a decree for complainants, defendants appeal. Affirmed.

The purpose of this bill is to have a deed absolute upon its face declared a mortgage, and that the complainants may be allowed to redeem therefrom. The deed was executed January 18, 1897, by complainants, who are husband and wife, to the defendant Clarendon C. Winegar. It was executed at the house of defendant Clarendon. Mr. Winegar and Mr. Carveth then went to the house of Mr. Winegar's attorney, and a contract was drawn up, the material part of which is as follows:

"It is agreed by said Winegar and said Carveth that in the event of the sale of said farm at any time before the 1st day of April, A. D. 1898, for a sum greater than the mortgage and accrued interest now on said premises, and the interest thereon from this date to date of said sale if made, taxes, and expenses attendant upon said sale; also the expense of any permanent improvement made by or through first party on said premises, and, further, the reasonable expense of putting in crops that may not be harvested at time of sale added to the other items heretofore mentioned; or, further, if said Winegar in the meantime shall have leased said premises, the expense of buying off said leaseholder shall be added,—then said Winegar, after deducting from the amount of money and securities, if any, received from said sale, shall and hereby agrees to pay to said Carveth one-half of what remains after deducting the several items above set forth.

"It is expressly understood and agreed by the parties hereto that these presents are to be construed and understood as a separate and distinct transaction, and independent from the sale of said lands by Carveth aforesaid to Winegar aforesaid, and in no way to affect the conveyance by warranty deed herein referred to.

"It is mutually agreed that the crops grown on said premises, after deducting expense incident to raising and marketing them, or the value thereof, shall be deducted from the items of expense heretofore mentioned.

"It is further mutually agreed that said Winegar shall deduct from the proceeds of the sale of said farm the sum of four hundred dollars for the value of one certain house and lot this day deeded by Winegar to said Carveth, together with interest on said $400."

The land was a farm of 160 acres. In 1893 it was mortgaged to one Anderson for $5,000. Mr. Carveth desired to take up this mortgage, which drew 7 per cent., and replace it by another at 6 per cent. Mr. Winegar wrote to his sister and brother-in-law in New York, March 22, 1893, that he had an opportunity to loan $4,000 on "one of the best farms in this part of the country. It is a farm of 160 acres, and would sell for $8,000 under the hammer." The loan was secured, the mortgage given, and Mr. Winegar took a second mortgage for $500 to help make up the amount necessary to pay the Anderson mortgage. This second mortgage was afterwards paid. Mr. Carveth paid the interest for 1894 and 1895. He was an old man, the crops for 1896 and 1897 were poor, and he was unable to meet the interest. Mr. Winegar paid the interest due in 1896, and took a chattel mortgage on a large amount of personal property to secure him. Efforts were made by both parties to sell the farm. It is claimed by the defendants that the price fixed by Mr. Carveth was too high, and that for that reason a sale was not made. Complainants charge that Mr. Winegar did not act in good faith, or make proper efforts to secure a sale. On the 8th day of February, 1898, in consideration of the sum of $100 to him paid by Winegar, Carveth released his interest in the contract, and signed a relinquishment thereof, which is

indorsed on said contract. Defendant George is the son of Clarendon, and purchased one-half of this farm from his father for $3,000, and is now in possession thereof, claiming to have made considerable improvements in reliance upon the validity of the title obtained by the deed from complainants to his father.

Outside of the terms of the deed and the contract, the testimony is in direct conflict. The testimony of the complainants, if true, makes the transaction a mortgage. The testimony of defendants, if true, makes the transaction an absolute sale, in trust, however, to be sold within the time fixed by the contract. Mr. Winegar testified:

" I told him [Mr. Carveth] I had a house and lot in Lowell I would give him for the place,—that is, and take security, what there was against the place,—and he could deed the place to me; I would take his place. And then I told him, in the course of a year, whatever I would sell the place for over and above what I had in it and expenses, I would give him one-half, and we would make as good a sale as we could."

The total amount due on the mortgage, together with interest paid by defendant Winegar, at the time the deed was executed, was about $4,700.

The court rendered a decree for the complainants, and an accounting to ascertain the amount due.

*John Nichol* (*Allen B. Morse*, of counsel), for complainants.

*S. P. Hicks* and *R. A. Hawley*, for defendants.

GRANT, J. (*after stating the facts*). We think there was ample testimony to sustain the conclusion reached by the circuit judge, and we see no reason for overruling that conclusion. The question is one entirely of fact. The circumstances under which the deed and contract were made, the conversation at the time, and the value of the land were competent evidence, under the decisions, to show that the transaction was intended by the parties to be a mortgage. If the title passed to Mr. Winegar, under his

own testimony, as well as under the contract, he took the property in trust to sell for the purpose of paying up his own debt and that of the mortgage to his brother-in-law, and to pay one-half of the surplus to Mr. Carveth.

This case comes within the rule that "in all doubtful cases the law will construe the contract to be a mortgage, because such a construction will be most apt to attain the ends of justice and prevent fraud and oppression." *Edrington* v. *Harper*, 3 J. J. Marsh. 354 (20 Am. Dec. 145). In a case somewhat similar in its facts, the court held that:

"The form of the instruments employed is immaterial. That the mortgagor knowingly surrendered, and never intended to reclaim, is of no consequence. If there is vice in the transaction, the law, while it will secure to the mortgagee his debt, with interest, will compel him to give back that which he has taken with unclean hands." *Villa* v. *Rodriguez*, 12 Wall. 323.

We think the case comes clearly within the rule of *Sowles* v. *Wilcox*, 127 Mich. 166 (86 N. W. 689). See, also, *Stephens* v. *Allen*, 11 Or. 188 (3 Pac. 168); *Russell* v. *Southard*, 12 How. 139; *Wharf* v. *Howell*, 5 Bin. 499; *Strong* v. *Stewart*, 4 Johns. Ch. 167; 1 Jones, Mortg. § 271. It is unimportant to state the details of the evidence. The facts in *Sowles* v. *Wilcox*, *supra*, are fully stated, and the facts in this case are sufficiently similar to those in that case to justify the holding that that case rules this.

It is urged that defendant George has made improvements upon this land in good faith in reliance upon his title. If so, he is entitled to compensation therefor, and his rights can be fully protected upon the accounting.

The decree is affirmed, with costs.

The other Justices concurred.