CUSICK *v.* SPENCER.

1. MORTGAGES—FORECLOSURE—RIGHT TO REDEEM.

Where the president of a bank, which had foreclosed a mortgage on complainant's property for more than the amount legally due, agreed that if complainant would remit $100 to him before the period of redemption expired he would redeem the property for the amount legally due and sell it to complainant on contract, and complainant sent the $100 as agreed, which the president used with his own funds in purchasing the property, he could not, by refusing to furnish complainant information as to how much was actually due upon the mortgage, defeat her of her right to redeem, nor by paying more than was legally due the bank compel her to pay him a like sum. ·

2. SAME—AMOUNT DUE—KNOWLEDGE OF AGENT.

A claim that complainant's husband, who attended to the business for her, knew the facts as well as the president of the bank, and that therefore complainant was bound to pay him the amount he paid the bank, is not well taken where, though complainant's husband knew that payments had been made upon the mortgage and the amount of them, he was not apprised of the computation and just what made up the total amount for which the place was sold. .

3. SAME—RECOGNITION OF COMPLAINANT'S TITLE.

Recognition by defendant president of complainant's ownership of the property, and his advising with her about repairs, is a circumstance supporting her right to redeem.

4. SAME—ATTEMPTED RESCISSION BY COMPLAINANT—EFFECT.

An unsuccessful demand of the $100 after failure to agree as to the amount legally due upon the mortgage does not operate to defeat complainant of her right to redeem.

5. SAME—LACHES—DEFENSE—AVAILABILITY.

A delay of seven years is not such laches as will defeat complainant's right to redeem, where neither of the defendants treated complainant frankly and openly, but withheld from her the true facts in regard to the payments made upon her mortgage, and, knowing of complainant's claims, acted in open hostility and defiance thereof and have been in no respect misled.

Appeal from Ionia; Lockwood, J., presiding. Submitted June 6, 1907. (Docket No. 31.) Decided September 20, 1907.

Bill by Esther L. Cusick against Edwin R. Spencer and the People's Savings Bank of Belding to declare a conveyance absolute in form to be a mortgage, and for an accounting. From a decree for complainant, defendant Spencer appeals. Modified and affirmed.

*R. A. & W. E. Hawley,* for complainant.

*Morse & Locke,* for appellant.

MONTGOMERY, J. This bill is filed for the purpose of having a deed made by defendant bank to defendant Edwin R. Spencer declared a mortgage and for an accounting as to the amount due Spencer, and for the privilege of redeeming.

The complainant, prior to 1894, was the owner of the premises in question, consisting of the south half of lots 158 and 159 of the city of Belding. There were two mortgages upon the property, the first amounting to about $300, subject to which the mortgage in question in this case was given. This last-named mortgage was, on the 20th of October, 1894, assigned to defendant Spencer. At that date there was due upon said mortgage the sum of $575. Complainant, through her husband, who acted as her agent in all the transactions involved in this case, agreed with Spencer to turn the rent of the house over to him to apply on the mortgage, and authorized Spencer to collect it. Spencer did collect the rent and, after paying taxes and some expenses, had in his hands $57.66 to apply on the mortgage, and turned over to the bank the $57.66 to be by it applied on the mortgage, and on May 3, 1895, assigned the mortgage to defendant bank. The bank notified complainant that foreclosure proceedings would be taken if payment were not made. On August 1st complainant sent a draft to defendant bank for $50,

and defendant Spencer paid to the bank $10.15 which he had retained in his hands but which should have been indorsed upon the mortgage. Complainant and her husband removed from Michigan to Wisconsin, and about this date defendant bank started foreclosure. The premises were bid in by the bank for the amount claimed to be due in the notice, together with interest and costs. No credit was given on the mortgage for the $57.66 rent, the $50 draft, and the $10.15 paid by Spencer, and the amount claimed to be due was excessive by the amount of $117.81.

In November, 1896, the defendant Spencer was approached in behalf of complainant with the request that some arrangement be made by which complainant might save her property. It should be stated that Spencer was the president of the defendant bank. On the 25th of November defendant wrote Mr. Cusick, complainant's husband, as follows:

"The time in which you can redeem the property expires some time next month. Mr. Post informs me that you would like to make one more effort to save the property. We have a chance to sell it as soon as we get possession so as to make a pretty good thing off of it, I think, but if there is anything to be made or saved out of it, it seems to me as if you ought to be the one to have the benefit.

"Now, I will make you this proposition if accepted before the redemption runs out: I will take up the first mortgage and collect the rents and send you receipts twice a year to apply on contract for sale from me to you. I will accept $100 as first payment and $15 per month thereafter. This you see will reduce the amount to where it would be safe for any one to carry in a short time."

On the first of December Mr. Cusick wrote Spencer asking for some information in regard to foreclosure. This was evidently before the receipt of Spencer's letter of the 25th. On the 2d of December Cusick wrote in reply to the letter of the 25th:

" Yours of the 25th was received this afternoon. Was not mailed until yesterday. I wrote you a letter, not hearing from you, and explained to you. Please answer that immediately and give me amount of interest, principal and costs, and in full what I am to pay. I do not understand what you mean by payment of $15 per month. Does it include the rent? I will make up the $15, but it may come quarterly as my daughter does not draw her pay every month, and so would have to pay two or three months at a time. Will that be satisfactory?"

On the 14th of December Spencer wrote Cusick as follows:

" The amount of the claim of the People's Savings Bank on your place here is $692.05, December 31st, 1896. I do not know just what the first claim is, perhaps you do. Now, if you will send me the $100, as you suggested, I will go and take up the first claim and give you a contract for a deed on the terms you made, $15 per month quarterly, you to have the rent applied on the amount. You may send the money to me or the bank and we will immediately receipt for the same. If you accept this proposition, let me know at once."

On the same day Cusick had written Spencer the following letter:

" I have written you three times but no reply as yet, and I am getting very anxious to hear from you, and to have the contract for that place. I thought that I made it plain to you what I could do, and am waiting in great suspense, as I do not know when the time of redemption runs out, and you did not say only some time this month."

On the 15th of December, Cusick wrote to Spencer as follows:

" Yours of the 14th is received, and contents noted, and in looking over your statement I cannot see how you make it $692.05. The principal was $500, and when I looked over one year ago last June there was somewheres about $25 interest due after paying that $10 house rent to Mr. Reed, and then I sent to Mr. Reed from Lowell, in draft, the last of July or the first of August, 1895, $50. You remember that I told you and Mr. Holmes that I would when you were in the bank, to keep the bank from fore-

closing. And that would, as I had in my mind then and now, reduce it to about $485, and the interest from then till December 31, 1896. And the expense of foreclosing is what would be added to the amount due. I suppose it cost about $50 to foreclose, and I cannot see how you make it $692.05. You must be mistaken somewhere.

"I wish you would look this all over and give me the dates of payments made and interest and otherwise, and what it cost to foreclose, and then I can see how it is. I only ask to have it all clear and satisfactory. But you can see by the way I state it, there is quite a wide difference, and if you can give me the figures and the dates of payments made on note, and the cost of foreclosure, it will show for itself."

And on the 19th of December Cusick wrote Spencer, enclosing him $100, and requested him to send statement· of amount and indorsements made on note by payments and interest, cost of foreclosure, etc., and asked that the contract be made in the name of Eunice E. Cusick, complainant's daughter, from whom complainant had made an arrangement to borrow the money to make the initial payment to Spencer.

On the 21st of December, 1896, Spencer again wrote as follows:

"In answer to yours of recent date I will say that I will take up all claims against the property, hold the deed in my own name and contract to deed to you free and clear when you shall pay me the amount actually paid by me with interest until paid at 7 per cent. The amount is as stated and I enclose you statement of bill of expense. You have or should know what the other claim is, as soon as I pay it will send you the amount if we deal.

"You can make a contract as well as I, as I am a very busy man and my time is all employed. The amount against the property has got to be paid by some one with accrued interest until paid. You can make the contract as we have proposed, one hundred dollars down and fifteen dollars a month until all legal claims against the property is fully paid with interest on all amounts unpaid at the rate of 7 per cent. per annum to be paid at the end of the year or you can so arrange as to pay the interest with each monthly payment. I see nothing which you

cannot fully understand excepting the exact amount to be paid, and I do not see how that can be determined until all the legal claims are paid. This will be the amount due the bank with interest till I sign the contract with you. The amount due on the first claim and the taxes now due. I know how you feel about this matter to see so much money as you have put into the place go, but cannot go to much further time and expense in trying to help you save it, so if you wish to deal make such a contract as I have suggested and send with draft with $100 to one of the banks or some one here. Make the amount to be paid all legal claims against the property up to the date of the contract."

This was in answer to the letter of the 19th from Cusick requesting a statement of the amount and indorsements made on the note by payments and interest, cost of foreclosure, etc.

On the 24th Cusick wrote in reply the following letter:

"Your statement of cost of sale is all clear, but I do not see where I have been credited with the amount that I have paid on interest to Rev. Shelly, and the rent paid to you, and the $50 sent to the bank.

"The amount of mortgage was $500, and I paid to the Rev. Shelly $45 or $50 on interest, and you had rent on house that amounted in all, I think, to about $66, and I sent to the bank $50 from Lowell to apply on mortgage; and, if you have given me credit for all of this, which, of course, you can see that I have paid, I do not make it as you do. If I am credited with what I have paid, that is all I ask. And, if you figure up the interest on the note and mortgage for four years (I think the mortgage was drawn in October, 1891), and the first was paid in full and then what cost has been, etc., and give me credit as I paid, is all that can be asked. And if you had sent me the statement separate of interest accrued, and the amount I paid, I could see where we disagree.

"You take the amounts that I have paid in and see what it amounts to, and then the amount of interest that accrued, and I think you will find up to the time of the foreclosure I was up with my interest on your mortgage of $500, and send me that statement, with the one on first mortgage, and you make out contract as you state, and collect the rent, and apply on payments, and it will be all right."

On the 7th of January Spencer wrote Miss Cusick that he had been waiting to get the amount of the first mortgage, and that he would, as soon as he learned that, send her the contract. On the 30th of January the contract was sent forward to Miss Cusick. On the 27th of February Cusick again wrote to Spencer asking for information in particular as to the amounts due upon the mortgage. Again on the 8th of March Spencer replied, giving the amount of costs only, but made no attempt to go into detail as to the amount of payments. On the 25th of January the land had been conveyed by the defendant bank to Spencer for the expressed consideration of $1,150, and Spencer was insisting that he had paid out in the transactions $1,149.52. Miss Cusick refused to sign the contract, evidently because of inability to agree as to the amount properly chargeable against the property, and finally demanded back the $100 which she had paid, which was, however, not refunded to her.

Complainant then employed Mr. Fallass, an attorney at Grand Rapids. He also demanded the repayment of the money and undertook to get some satisfaction out of the bank but succeeded in neither, and the matter ran along until 1904, when Mr. Cusick again came to Belding and tried to get a settlement, and failing in that this bill was filed, when for the first time, on the trial, it was conceded that the complainant's property had been charged with a greater sum in the foreclosure proceedings than was due to the bank, but it was insisted, *first*, that the agreement between complainant and Spencer was that he should pay the bank its claim and that therefore he was not in fault in paying the full amount for which the property was sold, and, *secondly*, that, inasmuch as the parties refused to sign the contract, no binding contract existed between complainant and defendant giving any right to the complainant to redeem from the sale.

When the relations of the defendant Spencer to the bank are considered, and the correspondence construed in connection with it, we are fully satisfied that the parties

contemplated and agreed that Spencer should redeem the property for complainant by paying all legal claims and none other. This. agreement was made before the time for redemption from the foreclosure. sale had expired. Complainant had remitted $100 in cash to be applied upon this contract, and the only reason that the written contract was not signed between the parties was that defendant Spencer ignored the requests of complainant's husband for a statement of the details of the transaction, with which he in part, at least, was familiar, and all of which appeared upon the books of the bank of which he was president, and to which books he is shown to have had access. His agreement was to advance the moneys to pay these claims against the property, and for this purpose a portion of the money, to wit, $100, was put in his hands and used by him for that purpose. This was money advanced by complainant, and to permit defendant to assert that by using this money with his own to take title over to this property, and then refusing to furnish the information upon which a written contract could be based, he has succeeded in defeating complainant of all her equities, is to permit him to take advantage of his own wrong or neglect. It is not necessary to assert that this information was fraudulently withheld by Spencer. It is obvious that it was arbitrarily withheld by the cashier of the bank, and defendant Spencer as well. He owed a duty to furnish this information to complainant and he ought not to be permitted to profit by his failure to do so.

It is claimed that complainant's husband knew the facts as well as Spencer. This is not exactly true. He did know that payments had been made and about the amount of them; but of the computation and just what made up the total amount he was. not apprised, as he had the right to be. Furthermore, defendant Spencer recognized complainant's ownership of the property. He for a time sought to advise with her, and stated that with relation to repairs he would be governed largely by her wishes. We are satisfied that under these circumstances the complain-

ant had a right to redeem upon payment of the amount of the mortgage. *Sowles* v. *Wilcox*, 127 Mich. 166.

It is insisted that complainant has lost her right to redeem because complainant's daughter, Eunice, endeavored to get back the money she had furnished, and because complainant acting through her counsel demanded repayment of the $100 paid to Spencer. Neither the bank or Spencer parted with any money. They were not deceived or misled by these demands. Their legal relations were not changed in any way, there is no element of estoppel, nothing more than an unsuccessful attempt to adjust a difference.

It is also urged that the complainant has been guilty of such laches as should defeat her remedy. Assuming that this defense is open upon the pleadings, we think the complainant has been guilty of no such laches as should defeat her remedy. Neither of the defendants treated complainant frankly and openly. They withheld from her the true facts in regard to the payments, and while complainant's husband may have known that she had not been credited with all of her payments he was not aware of the facility by which proof could be made by reference to defendant's books. Moreover, defendants, knowing the claims of complainant, acted in open hostility and in defiance to her rights and have been in no respect misled. It was known by defendants from the first that there was no acquiescence in the position taken by defendants, and as the delay has worked no injury to the defendants which cannot be redressed, we think this defense also should fail.

It seems that the defendant has built a house upon the adjoining property so that a few feet of it rest upon the property in question. By the decree below he was permitted to remove this. He was also permitted to recover the amount expended for repairs and improvements made to the house and premises, so far as were necessary and reasonable. We think it may be assumed that such repairs as were made in good faith were necessary, and

defendant should be allowed a reasonable expenditure for them.

With this modification, the decree of the court below should be affirmed, with costs of both courts to complainant.

CARPENTER, GRANT, BLAIR, and OSTRANDER, JJ., concurred.