### DALTON *v.* MERTZ.

1. Pleading—Assignment—Mortgages—Inconsistent Positions —Void Instruments.

One filing a bill to have an assignment of an interest in a land contract declared not absolute but security for advances made, cannot consistently claim that the assignment is void for want of consideration.[1]

2. Mortgages—Declaring Assignment Given as Security.

Complainant's testimony that he executed an assignment of his half interest in a land contract on which default had been made, intending to secure advances of his cotenant, who gave testimony disputing that of complainant, *held*, insufficient to support the burden of proof.

Appeal from Wayne; Murfin, J. Submitted June 5, 1912. (Docket No. 26.) Decided December 17, 1912. Rehearing denied February 18, 1913.

Bill by Robert M. Dalton against William M. Mertz to redeem from an alleged mortgage in the form of an assignment of an interest under a land contract. From a decree for defendant, complainant appeals. Affirmed.

[1] As to whether a deed absolute on its face, but intended as a mortgage, conveys the legal title, see note in 11 L. R. A. (N. S.) 209.

*W. G. Fitzpatrick* and *M. Hubert O'Brien*, for complainant.

*Frank N. Renaud* and *Frazer, Griswold & Slyfield*, for defendant.

BIRD, J. The purpose of complainant in bringing this suit was to have an assignment of a land contract declared a mortgage. The trial court refused to grant him relief, and he has appealed to this court for similar relief.

Complainant and defendant are lawyers and reside in the city of Detroit. For several years before this trouble arose they occupied the same office and did business under a firm name, although they were not partners as between themselves. Complainant gave some of his attention to buying and selling real estate and in the forepart of the year 1907 there was placed with him for sale a tract of 44 acres of land in Grosse Pointe township. The sale price was $35,000 and his commission was fixed at $1,000. Both complainant and defendant seemed to be impressed with the future prospects of this land, and complainant suggested that defendant purchase it. Defendant explained to him that his means were too limited to engage in a deal involving such a large amount, and that, if he should so engage and be unable to carry it through, he might lose what little he possessed. It was then proposed and agreed that they should both purchase it and make it a joint venture. Charles W. Restrick, the owner, was seen by complainant, and a deal arranged whereby the premises were sold to complainant on a land contract, dated September 24, 1907, for $34,000. The terms were $1,000 payable when the contract was executed, $9,000 in 60 days, and the balance in sums of not less than $3,000 each year. The first payment was promptly made. The second payment of $9,000 was not paid when due because complainant was unable to pay his share of it. After some delay, he arranged with Restrick to accept a payment of $2,500 with some accrued interest in lieu of the $9,000 payment. Each gave his check for $1,262.50 to cover this payment.

Complainant's check was postdated. When it became payable it was presented at the bank, and payment was refused by reason of "no funds." The check was renewed but was never paid. About this time complainant's financial matters became very much involved, and he was unable to meet his share of the payments. Defendant hesitated to meet his share of them for fear he would lose all. Matters went along in this way until November 4, 1908, when Restrick forfeited the contract for the nonpayment of upwards of $10,000 of principal and interest. Three days later, on November 7th, complainant executed and delivered to defendant an assignment of all his interest in the contract; the defendant agreeing therein to assume all the obligations of complainant imposed by the contract. Subsequently defendant secured assistance, and on November 9th he made a new arrangement with Restrick whereby he consented to the assignment and arranged as to future payments. From that time on the defendant made payments, and when this suit was begun in August, 1910, he had paid thereon upwards of $13,500 besides paying taxes, insurance, and for improvements.

In June, 1910, complainant demanded a reconveyance of a one-half interest in the contract, and later he offered to reimburse defendant for one-half of the payments made thereon, his claim being that he conveyed his one-half interest in the contract to secure defendant for whatever advances he might make on his account. This demand was refused, and later in the summer this suit was commenced to enforce the demand. It was the claim of the complainant that, soon after the execution of the assignment, his business affairs became badly involved, and that in consequence thereof he was unable to meet his share of the payments as they fell due, and that defendant in consideration of the assignment of the contract agreed to carry the deal for him, as he had in the first instance carried it for the defendant, until either a sale was made of the premises or his financial position became easier, at which time defendant was to be reimbursed for all ad-

vancements made on his account. The defendant denies these claims and insists that the assignment was unconditional and absolute. He asserts that after the forfeiture the complainant executed and delivered to him the assignment, with the announcement that he was through with the deal, and that defendant must take care of himself the best he could; that since that time complainant has given no attention to the property, has paid nothing thereon, and has had no possession thereof; that he made no claim that he had any interest in the property for over two years after the assignment was given; and defendant charges that complainant would have made no claim when he did, save for the fact that the property has increased in value very rapidly since the fall of 1909.

The question is raised by complainant that the assignment is void for want of consideration. However much of merit there may be in this contention, the complainant is in no position to raise it, as he has brought the instrument into court and asked for a construction thereon beneficial to himself. To rely on the instrument as a mortgage, and at the same time condemn it as being void, is a position not within the rules of equitable consistency.

The remaining question, an important one, is a question of fact involving the veracity of the parties. The conflict is very sharp on the essential point as to whether the assignment was intended to be absolute or simply to operate as a security.

We think it would be without profit to the profession to discuss the testimony which makes for or against the veracity of these parties. We have given the record and briefs close attention and have considered the case, keeping in mind the friendly relations of the parties; the fact that none of their engagements was reduced to writing, the financial position of each; the reason given for making the assignment, and the attitude of each toward the property since the assignment was made; and, while we are still in doubt as to which party is right in his contention, we are of the opinion that the complainant has

failed to discharge the burden of proof which rested upon him in making out his case. The proof should be clear and convincing before an instrument which, on its face, purports to be an absolute conveyance is declared to be a mere security. For complainant's failure in this respect he must be denied relief.

The decree of the trial court will be affirmed. The defendant will recover his costs in this court.

MOORE, C. J., and STEERE, MCALVAY, BROOKE, STONE, and OSTRANDER, JJ., concurred. KUHN, J., did not sit.