SMITH *v.* SMITH.

1. Mortgages—Deed as Security—Presumptions.

In construing an instrument claimed to be a mortgage, but appearing on its face to be an absolute deed, the proof ought to be sufficient to overcome the presumption that the instrument is what it purports to be; evidence that it was intended merely as security should be clear and convincing.

2. Same—Evidence.

Conflicting proofs relative to the intention of decedent grantor to execute a deed to his son as security for an

indebtedness reviewed, and *held*, to support the trial court in finding that the deed was absolute.

Appeal from St. Clair; Tappan, J. Submitted April 10, 1913. (Docket No. 29.) Decided October 1, 1913.

Bill by James B. Smith against Angus M. Smith for the cancellation of a deed. From a decree for defendant, complainant appeals. Affirmed.

*Burt D. Cady* and *John B. McIlwain,* for complainant.

*Walsh & Walsh,* for defendant.

KUHN, J. The original bill of complaint in this cause was filed to set aside a deed, given by Abram Smith to his son, Angus M. Smith, of certain lands in St. Clair county, Mich , alleging that at the time of the execution of the deed the father was mentally incompetent to transact business. Upon this bill the case proceeded to a hearing, and at the conclusion of the proofs complainant asked leave to amend his bill so as to have the deed declared a conveyance in trust to Angus Smith for the purpose of selling the land and property, or as a security to him for what was due and owing to him by Abram Smith, if any amount was owing him, and that a full and complete accounting be ordered of the amount due Angus. , The circuit judge allowed the amendment, and dismissed the bill. He found that Abram Smith, at the time of the execution of the deed in question, was in full possession of his mental faculties, and thoroughly understood the nature of his act when he made the deed, and that it was not intended as a mortgage. As the findings of the circuit judge give a succinct and clear statement of the matters in controversy and of his conclusions, they are herewith set forth in full:

"The bill of complaint herein is filed by James B. Smith, complainant, for the purpose of setting aside a certain conveyance of real estate described, and asking for an accounting of the partnership affairs and the accounts of the corporation of Abram Smith & Son.

"The pleadings and proofs show that prior to 1890 Abram Smith was conducting a shipyard at Algonac, this county, at which was built and repaired wooden vessels. It is shown that he had become quite heavily involved in debt, and, at his request, his youngest son, Angus M. Smith, defendant herein, left employment in Ohio and joined his father in a copartnership under the firm name of Abram Smith & Son, and under this copartnership they continued the business of building and repairing wooden vessels. This copartnership continued for a number of years, when the business was incorporated under the name of Abram Smith & Son; the entire stock of the concern being held by Abram Smith and Angus M. Smith, with the exception of one share, which was held by a daughter of Angus M. Smith. In the conduct of the business of the copartnership and the corporation, Abram Smith took a more or less active part until within about the last three years before his death, which occurred January 20, 1910. During the continuance of the copartnership it appears that Angus M. Smith, the defendant, conducted a separate wholesale and retail coal business, and throughout the entire period, both of the copartnership and the corporation, borrowed considerable sums of money at the German-American Savings Bank of Detroit.

"The taking of the proofs has occupied the court for fully three weeks of time; a large portion of the evidence received being directed towards an examination of the books of account of the copartnership and also of the corporation, together with the account of the corporation at the German-American Savings Bank. At the close of the proofs, solicitors for the defendant announced to the court that he would not be requested to attempt to summarize accounts, or to determine on which side of the account between Abram Smith and Angus M. Smith the balance lies. It was suggested, however, that the court refer the

matter of an accounting to a circuit court commissioner.

"The proofs show that at the time of his death Abram Smith was 89 years of age. He was born in the township where he died, and had throughout his life been a man of exceptional vigor, of strong mentality, and high standing as an energetic and able business man. During the latter part of his life he had ceased to take an active part in the direct management of his business affairs; his eyesight had become quite seriously impaired, but the proofs show that even during this period he retained a strong mental grasp on affairs in his family, concerning such business matters as were brought to his attention, and a comprehension of the general news of the day, both local and national.

"It appears from the proofs that on July 5, 1904, Abram Smith procured John M. Robertson, a magistrate of Algonac, to draft for him a will, which he executed. By the terms of this will he gave to his son John A. Smith a certain parcel of real estate, and the balance of his property, real and personal, he left to his remaining children, James B. Smith, the complainant herein, Cornelia Seaman, a daughter, Ella M. Moore, a daughter, and Angus M. Smith, the defendant herein, in equal shares. This will was admitted to probate in this county on the 9th day of March, 1910, when it was allowed as the last will and testament of the deceased. It also appears from the proofs that on December 19, 1907, Abram Smith conveyed to his son Angus M. Smith, defendant, a farm of 320 acres, located on the river St. Clair, a short distance above the village of Algonac, being private, claim 199, in township 3 N., range 16 E., which deed of conveyance was recorded on the 20th day of December, 1907, in Liber 180 of Deeds, p. 612. The consideration named in this deed was $24,000. By the allegations of the original bill of complaint it is sought to have this conveyance set aside on the ground of mental incompetency, undue influence, and fraud.

"Upon the hearing it was shown that at the date of the execution of this deed by Abram Smith, Angus M. Smith, the grantee, drafted, executed, and delivered to his father, Abram Smith, a written agree-

ment, to the effect that in case Angus M. Smith should sell the farm conveyed to him during the lifetime of his father, Abram Smith, then Angus should pay to his father the excess above $24,000 received as the proceeds of the sale. This agreement also recited that the consideration of $24,000 was comprised of a certain mortgage against the farm given to Mr. Whitney by Abram Smith, a mortgage given to Angus M. Smith, and certain other considerations. The agreement was signed by Angus M. Smith and Abram Smith.

"After the close of the proofs, and upon the final argument of counsel, counsel for complainant proposed an amendment to the bill of complaint, and by this amendment set up the allegation that this agreement and the deed constitute a mortgage against the farm for $24,000, and by the same amendment asked an incorporation in the bill, as amended, of a prayer that the court declare the agreement to be a mortgage, and that an order or decree be entered directing a sale of the property and the payment of the excess to the estate of Abram Smith. The solicitor for the defendant objects to the allowance of this amendment, and made the request in open court that in case the court should allow the amendment that he be permitted to offer proof as to the value of the farm in question.

"It is my conclusion that all questions raised should be settled by this litigation, and for that reason I shall allow this amendment to be made, and the bill will now stand as the amended bill of complaint. Solicitor for defendant will be permitted to offer such further proof as he may deem necessary in view of the amendments allowed.

### "Mental Incompetency, Fraud, and Undue Influence.

"It is my conclusion that not only has complainant failed to establish his allegations of the mental incompetency, undue influence, and fraud in the procurement and execution of the deed of conveyance of the farm in private claim 188 on December 19, 1907, but, on the contrary, the proof is clear and convincing that on that date Abram Smith was in the full possession of his mental faculties, and competent to com-

prehend and did comprehend the nature of the transaction, and that he was conveying this farm to the defendant, Angus M. Smith. The proofs show that he went alone from his home to the office of John M. Robertson, who had drafted his will and other papers and conveyances for him, and informed Mr. Robertson that he wanted to convey this farm to his son Angus; he directed him to obtain the description and draft the deed, and bring it to his home for execution. All of these directions were given solely by Abram Smith to Mr. Robertson. Mr. Robertson prepared the instrument, took it to the home of Mr. Smith, and in the presence of his two daughters, Mrs. Seaman and Mrs. Moore, read the instrument to him, after which he executed the deed, and it was witnessed by the two daughters and Mr. Robertson. Both of these daughters testified as to these facts, and that their father was fully competent to understand and did understand, the transaction, and that there was no influence whatever exerted upon him in the procurement or execution of this instrument. These two witnesses are not only not interested in sustaining this deed, but, should it be set aside, would, under the terms of the will, each be entitled to a one-quarter interest in this farm. In addition to this evidence, the evidence of citizens and neighbors who had known Abram Smith, some of them a lifetime, all are positive in their opinion that he was mentally competent to execute this instrument. Under these proofs it is my conclusion that the deed in question was executed by Abram Smith, with a full comprehension as to its import and character, and without undue influence or fraud of any sort.

"Is the Deed of December 19, 1907, a Mortgage?

"By the allegations of the amended bill the question is now raised as to whether the deed of December 19, 1907, is an absolute conveyance or a mortgage for $24,000. Inasmuch as the case may be determined upon the proofs as they now stand, I deem it advisable to determine this question at this time. Much time was spent by counsel for complainant in an inquiry as to the character of this transaction, and in an attempt to show that the deed was to operate merely as a security and not as an absolute con-

veyance. The evidence of Mrs. Moore and Mrs. Seaman is to the effect that the father frequently announced his intention of giving this farm to Angus, stating as his reason that Angus had come to his relief at a time when he needed assistance, that he had assisted him financially, and helped him pay his debts, and that he thought in view of all that he had done that Angus should have the farm. A considerable time after the deed had been executed Abram Smith told his lifelong friend, Mr. Stewart, that he had given the farm to Angus. As opposed to this, not a witness has given evidence to indicate that this transaction was the creation of a lien on the farm. We have the proposition that this agreement of December 19, 1907, signed by Abram Smith and Angus M. Smith, shall, in itself, without any further proof, operate as a mortgage, notwithstanding all of the positive evidence to the effect that Abram Smith intended, by the deed of conveyance, to convey an absolute title to his youngest son. It is my conclusion, as a matter of law and fact, that this agreement does not operate to constitute the deed in question as a mortgage merely; but that instead the conveyance of December 19, 1907, executed by Abram Smith, conveys an absolute title in fee simple in the defendant, Angus M. Smith.

"Further Accounting.

"At the close of the proofs, and upon the argument of counsel, for the first time the court was informed that under the proofs as taken the court would not be asked to strike a balance and determine the state of the account between Angus M. Smith and his father, Abram Smith. Upon petition of complainant's solicitor the court had entered an order granting complainant's solicitors and assistants all access to the books of account, checks, bills, and bank account of the copartnership and the corporation at the office of the corporation at Algonac. In pursuance of this order solicitor for complainant procured the assistance of an accountant, who was given full access to all of the books of account, checks, bills and bank books of the concern, and the proofs show that he spent about a week in the performance of this work at the office of the corporation, and in addition he was present in court a considerable part of the

time while the proofs were being taken as to these accounts. It was the understanding of the court that this time was being spent for the purpose of determining the exact account for use in the case an accounting was deemed necessary. It is my conclusion that no further steps should be taken in relation to the matter of an accounting, and this finding concerning this phase of the case is made solely for the purpose of settling this question with the others presented."

The record is voluminous, containing 840 pages of printed matter, and no effort seems to have been made to reduce it to narrative form or to eliminate immaterial matter. A large amount of the testimony is directed to the claim made in the original bill of complaint that Abram Smith was incompetent at the time of the making of the deed. This claim is, however, not urged upon this appeal, and the arguments and carefully prepared briefs are directed to the claim made that the deed should be construed as a mortgage. In considering this contention of the complainant, it is well to have in mind the rules of law applicable thereto. In a recent case, *Crane* v. *Read,* 172 Mich. 642, at page 647 (138 N. W. 223), Mr. Justice STONE, speaking for the court, said:

"In this class of cases the proof ought to be sufficient to overcome the presumption that the instrument in question truly represents the transaction in its entirety. *Schmidt* v. *Barclay,* 161 Mich. 1 [125 N. W. 729, 20 Am. & Eng. Ann. Cas. 1194]."

Again, in *Dalton* v. *Mertz,* 173 Mich. 153, 157 (138 N. W. 1055), this court said:

"The proof should be clear and convincing before an instrument which, on its face, purports to be an absolute conveyance is declared to be a mere security."

See, also, *Sowles* v. *Wilcox,* 127 Mich. 166 (86 N. W. 689).

The complainant called to the witness stand the defendant, Angus M. Smith, who stated that the sale of the farm was discussed by him with his father for several days, and also in the presence of his sisters, Mrs. Seaman and Mrs. Moore, and stated that he was to have the farm and the personal property on it for $24,000.

It appears that at the time of the execution of the deed Angus M. Smith gave his father a writing, in which he agreed in case he should sell the farm during the lifetime of his father to pay to his father all moneys he received over and above $24,000. Mrs. Moore and Mrs. Seaman, the daughters of the deceased, were also called by the complainant, and testified that the giving of the deed was the voluntary act of their father, and detailed conversations with him in which he expressed the desire that Angus should have the farm. Mrs. Seaman, being examined by complainant's solicitor, testified as follows:

"*Q.* Do you remember the circumstances of the signing of this deed by Abram Smith?

"*A.* I knew it was in connection with his own affairs and my brother's.

"*Q.* Do you remember now the circumstances surrounding the signing of it as a matter of memory?

"*A.* Yes, it was at home in the dining room. My father's desk was in the extreme end of part of the dining room.

"*Q.* Who was present?

"*A.* My daughter, Mrs. Johnson, Mrs. Moore, Mr. Robertson, and myself.

"*Q.* Mr. Robertson came there?

"*A.* He brought the deed there, as I remember it.

"*Q.* Do you remember whether or not before he brought the deed there you had any knowledge or information from any source that such a deed was to be given?

"*A.* I don't know; I don't remember.

"*Q.* Did you talk with your sister about it in any way?

"*A.* No.

"*Q.* Or your father about it?

"*A.* No.

"*Q.* Was the deed prepared when Mr. Robertson brought it there?

"*A.* I think so.

"*Q.* All but the signing and acknowledging?

"*A.* Yes, sir.

"*Q.* And you saw your father sign it?

"*A.* Yes, it was read over to my father in my presence.

"*Q.* And you know it to be the deed of the farm?

"*A.* Yes, I did.

"*Q.* Was there anything said there about the three witnesses signing as witnesses?

"*A.* No, I have no recollection of it.

"*Q.* And you don't have any recollection of what was said before that as to why the deed was given?

"*A.* I know that it was my father's wish to give it. Of course, I knew that he attended to his own affairs, and knew what he was doing.

"*Q.* What was the purpose of giving it, as you understood it at the time?

"*A.* To make things a little easier for father, and to pay my brother his indebtedness.

"*Q.* To pay your brother his indebtedness, and make things easier for your father?

"*A.* Yes.

"*Q.* In what way would this make things easier for your father?

"*A.* He wouldn't have the worry of those mortgages that were hanging over the farm.

"*Q.* Wouldn't have the care of the farm?

"*A.* No.

"*Q.* Was that talked of at that time?

"*A.* I presume it must have been.

"*Q.* What was your father to get out of this?

"*A.* As I remember, in case my brother sold the farm during my father's lifetime he was to get anything over the $24,000, in case it was sold during father's lifetime.

"*Q.* Was it the understanding that Angus was to proceed and sell the farm?

"*A.* I don't think so; I don't remember that."

Both of these witnesses testified against their own

interests, as they would profit together with complainant if the contention of the latter could be sustained. It is intimated that Mrs. Moore was acting in concert with Angus; but we are satisfied that the record does not warrant this claim.

Charles Stewart, a friend of Abram Smith, a man 77 years of age, testified concerning a conversation he had with him as follows:

"A year before he died, or 18 months, it may have been a year and a half, I wouldn't be certain about that, but he told me that he had sold the farm to Angus, deeded the farm to Angus. He says, 'I can't do any more up there, and Angus has done a great deal of work there,' he says, 'and I have let him have the farm.'"

John M. Robertson, who drew the instrument, testified as follows:

"*A.* Well, on that day, I think between 10 and 11 in the forenoon—I know it was the middle of the day; it wasn't evening anyway; my impression is it was the forenoon—Mr. Smith came into my office, and I was sitting there alone. He said: 'Mr. Robertson, I wish you would draw me a warranty deed of my farm to Angus M. Smith, and put in the consideration. I think it is $24,000; I hain't seen it since (examines deed); yes, $24,000;' and says, 'You know the description.' 'Yes,' I says, 'it is the north half of private claim 188.' 'Yes, you know the description,' he says; 'well, you make it right out.' I says, 'Yes, sir.' 'How long will it take you?' 'Oh, not very long.' 'Well, would you just as soon make it out, and bring it up to the house? I don't care to wait.' I said, 'Yes, sir.' 'Well, you will bring it right up?' 'Yes, sir.' 'All right, I will go up.' So there wasn't any other business and I went to my atlas that lays there on the safe, to be sure it was the north half of private claim 188, 320 acres of land. I made the deed out, and put my stamp there on it, because I didn't take that with me, 'Notary Public, St. Clair County, Michigan,' and date of commission. I took the deed up there, and went into the house and gave it to him, and he took it and looked it over. He either

had his specks on or put them on and looked the deed over to see if the description was all right, and I told him I thought it was. He said, 'Yes.' He turned it over, and I think he says, 'Where do I sign?' And went to the desk in the dining room in the northeast corner, and I showed him, and after I did he signed his name. I took it then, and signed my name as a witness, and put my name here as notary, and I said to Mrs. Moore and Mrs. Seaman who were present— I think I brought the deed and put it on the dining room table—and I said, 'Come here, girls, and sign this deed; it takes two witnesses.' So Ella Moore signs her name to the deed, and Mrs. Seaman signs her name to the deed. When I saw Mrs. Seaman sign her name to the deed, I noticed then, and says I, 'That is three witnesses on the deed.' But I took it . the reason for both signing was because I said, 'Come, girls, and sign this deed; it wants two witnesses on this deed,' and, they not being familiar with whether it took two or three or four, they both signed it. That was about two years before he died that I made the deed, as near as I can remember. I am not sure but Mr. Smith asked the other woman to sign; it seems to me something like that he asked her, that he said, 'Nellie, here you sign, too'—something like that."

Considerable effort was made to show irregularities in the books of the partnership of Angus and his father, and that mortgages which had been given by the father to Angus, and which entered into the consideration of the deed, were given without consideration. It would profit no one to attempt to go into the details of these alleged irregularities. That there were certain irregularities in the keeping of the accounts there can be no question; but upon the vital question in this case, which was one of fact, whether or not the deed in question was given as an absolute conveyance, it seems to us the complainant has completely failed to make out his case, and the proofs are convincing that by the deed of conveyance it was the intention of the father to convey an absolute title to

his son. The claim is also made that the value of the farm at the time of the giving of the deed was largely in excess of the consideration named in the deed. Evidence was taken upon this question; but from the testimony of those witnesses we are satisfied that the consideration named was a fair value of the farm at that time. The complainant having failed to establish his case by sufficient proof, the bill was properly dismissed.

The decree of the trial court is affirmed, with costs.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred.